BENJAMIN F. DINGLEY, Appellant, *v.* THE STAR KNITTING COMPANY, Respondent.

An omission by an employer to provide against an alleged defect in a machine in ordinary use, which defect no one has been able to point out, will not warrant a finding that the employer has failed in the discharge of his duty towards his employe.

*McCarragher* v. *Rogers* (120 N. Y. 526), distinguished.

(Argued June 16, 1892; decided October 1, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 12, 1890, which affirmed a judgment in favor of defendant entered upon a nonsuit at Circuit.

The nature of the action and the facts, so far as material, are stated in the opinion.

*J. F. Crawford* for appellant.

*E. Countryman* for respondent.

PARKER, J.   The action was to recover for the loss of service to plaintiff of his minor son, occasioned by an injury to him which plaintiff alleges to have been due to the negligence of the defendant.

At the time of the accident the defendant operated a knitting mill in which plaintiff's son, then about fifteen years of age was employed.

He had charge of the running of seven second breakers, sometimes called cards, operated by water power.   A line of shafting extending along one side of the building, was connected with the card by a belt, which ran on a tight pulley when it was desired to keep the card in motion, and it was transferred to a loose pulley when the purpose was to stop the card.   The pulleys were located side by side, each being about five inches wide.   The machine is stopped by pressing the hand against the driving belt, and running it off from the tight pulley on to the loose one.   The machine is started by pressing the belt back on to the tight pulley.

It was a part of the duty of the injured boy to clean out the waste which accumulated under each machine, and as we must adopt the view of the evidence most favorable to the plaintiff, it must be assumed that in the performance of this duty he was required by the defendant to reach under the machine with his hands.

On the first of October, 1884, while he was operating the machine, he changed as he claims, the belt from the tight to the loose pulley and commenced with his hands to remove the waste from the machinery as was his custom, and in accordance with his duty as defendant's employe, and while in that position the machine started, and in the revolutions of the cylinder his hand was caught, and seriously injured.

The injured boy, prior to the accident had considerable experience in the operation of machines of this character. He had worked in other mills, in which he had operated similar machines, and after going into defendant's employment he had had charge of the machines in question, for several weeks.

SICKELS—VOL. LXXXIX.      70

There is no basis therefore, on which to predicate negligence of the defendant in failing to inform Dingley of the dangers incident to the operation of the machines, nor is such claim made.

The sole question then is, whether the evidence adduced would support a finding of fact that the defendant failed to perform its duty towards Dingley in selecting suitable machinery for his use, and keeping it in repair. The machine in question was such as was in ordinary use ; it was operated in the usual way. No attempt was made to point out the specific defect which the plaintiff claims the defendant negligently permitted to exist. It was proven that the machine was not fastened to the floor. But neither were any of the other machines in the building ; nor is there any proof that such machines are ordinarily and commonly fastened to the floor. And in this connection it should be said that the evidence does not tend to show that this machine was situated with reference to the shafting differently than such machines usually are.

It is contended by the appellant that there is eviaence which would authorize the jury to infer that there was some defect either in the pulleys, or in the location of the machine, because : First. Plaintiff testifies that on the occasion of the injury he had run the belt off from the tight pulley on to the loose one, about seven minutes before the starting of the machine which caused the injury.

Second. Dingley's brother testifies that he was formerly employed by the defendant in the operation of these machines, and on one occasion about two months before the injury complained of, he ran the belt off the tight pulley on to the loose one, and started to go home, but was stopped by Mr. Dunlap the superintendent, who directed him to go back and stop the machine. That he went back and pushed the belt off the tight pulley on to the loose one again, after which he started to go out only to be again stopped by Mr. Dunlap, who directed him to go back and stay until the machine stopped running. This was again repeated, and

finally the witness threw off the belt and tied it up, Mr. Dunlap saying he would fix the card in the morning.

Mr. Dunlap denies most emphatically any such occurrence, or that the machine was ever out of order to his knowledge. But his testimony is of course of no importance on this review, because the jury might possibly have believed the witness Dingley. The witness also testified to two other occasions, when he claims the machine started without interference on his part, but he kept the information to himself, and it is not claimed that the defendant became aware of it.

Adopting as we must the most favorable view to the plaintiff of the evidence to which we have alluded, the situation is as follows : The machine was such as was in ordinary use, and for aught the evidence discloses, the best known ; it was situated with reference to the shafting as were the other machines in that room, and in other mills ; no special defect in its situation or construction was pointed out ; no one pretended to be able to assign with certainty, the cause of the transfer of the belt from the loose to the tight pulley, if it was in fact so transferred, but because the machine started on this and three other occasions, it is insisted that the jury had a right to infer that there existed a defect of some kind which the defendant was negligent in not providing against notwithstanding the precise defect was then, and has since remained unknown.

In other words, that the jury may find that the defendant failed in the discharge of his duty towards his employe, by omitting to provide against an alleged defect in a machine in ordinary use, which so far no one has been able to point out. A proposition which if sustained, extends the liability of the master to his servant far beyond its present boundaries, and would be without reason to support it.

In attempting to ascertain what inferences may properly be drawn from the testimony under consideration, other facts than those to which we have alluded, must be borne in mind.

It appears that for several years before the accident, the machine worked as well as other machines, with the excep-

tion of the three occasions testified to by the injured boy's brother.

John Hamilton operated it the day following the accident, and he testified that "it worked just the same as any other card; it ran all right; no difficulty about the belt slipping from one pulley to the other; I cleaned the machine at night in the usual way; I stopped the card; I took my hand and shoved the belt over on the loose pulley; I waited until the card stopped then I pulled the waste from under the card."

John Dunlap, the superintendent of the room, testified, "I found the clothing all bruised and torn up where his arm went in; it took me half a day, I think, to clean it and repair it; which had to be repaired before the machine could be run; this clothing is made of small wire set in leather, it covers the ·cylinder; this clothing was not out of order at any other place than where his hand went in; I suppose that was caused by the accident; there was nothing else out of order about the machine; the pulleys were not out of order, nor the belt; as soon as that was repaired the belt was put ·on, and the machine started up immediately; no repairs were made to that, it was started and used  *  *  *  ; I never heard any more about that machine after the accident, no complaint about it while I was there; it operated all right after that up to the time I left the company. It ran just as smooth and perfect as before, no trouble with it whatever."

Van Bramer, a former employe of the defendant, said : "I never knew from any source that it (the belt) slipped from its own accord and set the machine in motion; I was there and noticed how the machine worked after the accident the next day; after Dingley went home and the new man operated the machine, it worked right after Mr. Dunlap had fixed the wire clothing; I never heard any complaint nor seen anything wrong about the belting or the pulleys; it had not to my knowledge run off and started the machine running from the loose pulley of its own accord on to the fixed pulley, either before or after this accident."

No attempt was made to show that the defendant made

any repairs or did any work affecting the movement of this machine after the accident to Dingley, nor was any attempt made to dispute the assertion of the defendant's witnesses that from and after the accident, without repair or alteration, the machine continued to operate perfectly. In this connection evidence of another character should be considered. One Cummings, an expert witness, and the only one produced by the plaintiff, was inquired of as to the weight which the subsequent good conduct of the machine should have in determining the probable cause of the accident. He said, "I could not expect the machine to work all right the next morning, if started up again, just as it was left the night before.

" Q. You would not expect it to continue to work all right for the next two or three weeks?

"A. Well, sometimes there is cause for that; if it was true that that belt at night, when you were closing up the works, had slipped from the loose pulley on to the fixed pulley three times, so you could not stop it without tying up the belt, I would not expect that machine to run all right next day, and the next two weeks without running off."

The witness Butler, who had operated this machine about eight months, was inquired of as to whether there was any difficulty in stopping the machine. He replied: "Not when I took pains in shifting the belt, and shifting it properly; it would be shifted properly by giving it time to reverse on the upper pulley, the two pulleys at the same time; if you did not give it time, the chances would be that sometimes it would go back on the tight pulley and set the machine going; I should say that that would be the result of mismanagement in shifting the belt."

George Davis, who operated this machine subsequent to the injury for about a year, said: "It operated all right; when I did not properly stop this particular breaker on which Dingley was hurt I had difficulty with the belt running from the loose to the fixed pulley; sometimes going home I would be in a hurry and I would not shift the belt off entirely, and

it would run on again ; when I shifted it off entirely I never had any trouble in its going back."

Now, in the light of the evidence to which we have referred, it seems to be apparent that assuming it to be true that the machine started on the three occasions testified to by Dingley, that the inference legitimately deducible from it is not that the machine was defective, but rather, that in his haste to go home, of which acknowledgment is made, he failed to shift the belt entirely from the tight to the loose pulley, thus making it possible for it to run on again and start the machine in motion. Certainly that inference is the more reasonable and natural one to be drawn from the evidence considered as a whole than would be one declaring that the machine was in some manner defective.

But if the one could be drawn as readily as the other, it would still be our duty to affirm the judgment.

*McCarragher* v. *Rogers* (120 N. Y. 526) is not in conflict with the position here taken. The General Term correctly points out one important difference between that case and this.

The judgment should be affirmed.

BRADLEY, J. (dissenting). The burden was with the plaintiff to prove that the injury suffered by his minor son was occasioned by the negligence of the defendant, and without any contributory negligence of the person injured. The question is whether or not there was any evidence to support those propositions of fact. When the plaintiff's son Joseph went into the defendant's service, he assumed the ordinary hazards incident to it, and the defendant undertook to use reasonable care in providing and maintaining suitable machinery and implements for his use, with a view to his protection against danger of injury from them while duly engaged in the work assigned to him. The boy was engaged in operating what may be termed a carding machine, which was propelled by power communicated to it and applied by means of a belt extending from a line of shafting to a pulley,

and the method of stopping this machine was by pushing the belt on to a loose pulley. These two pulleys were close together, and the shifting from one to the other was done with the hand. It was his duty, from time to time, to clean out the apparatus, which he says he was required to do with his hands, and for that purpose to get down under the card. While he was thus engaged on the occasion in question, the machine started in motion, causing a severe injury to his hand and arm. Taking his statement as the fact, he was not chargeable with contributory negligence, but whether or not he was free from such negligence was a question for the jury. His evidence is to the effect that he shoved the belt on to the loose pulley, that the machine stopped and, before he proceeded to the cleaning beneath it, the machine had remained passive for three or four minutes, he having in the meantime been engaged cleaning other portions of it. But that while he was down cleaning the lower portion of the apparatus, the machine suddenly started up and caused the injury. The machine was then set in motion by the belt slipping or passing from the loose to the tight pulley by which it was operated. This being done without any manual aid, tended to indicate that it was the result of some defective condition which caused the transmission of the belt from the one to the other pulley, assuming, as the evidence tended to prove, that it had been properly transferred by him to the loose one. And it may be accounted for by the fact that the alignment of the machine and gearing may have been or become disturbed and imperfect. The inference was permitted that such was the cause for the shifting of the belt and the consequence which followed. The machine was not fastened to the floor otherwise than by its own weight, nor were the other machines in the establishment. The fact that it may by its vibration have been moved sufficiently to place it out of the true line with the driving-belt, and thus causing it to slip on to the tight pulley, was not of itself sufficient to charge the defendant with negligence. But if the defendant had been advised that a like difficulty had existed, and that in consequence the belt was

liable to slip from the loose to the other pulley, and put the machine in motion, it would seem that the duty devolved upon the defendant to use due care to prevent it, in view of the danger in which the employe might by such occurrence be placed while engaged in cleaning the machine in the manner the plaintiff's son says he was required to perform that service.   There was evidence given on the part of the plaintiff tending to prove that sometime before this boy commenced work there, the belt had in like manner passed from the loose pulley to the tight one, and set this machine in motion; that the superintendent of the defendant was present on one occasion, and saw it so operate, when ineffectual effort was made to cause the belt to remain on the loose pulley and prevent its slipping from it and starting the machine, and when it became necessary to tie up the belt; and that the superintendent then declared his purpose to fix it.   The injured boy testified that he had at the time of his injury received no information that the belt had before so slipped from one pulley to the other or that it was liable to do so. Assuming as we may for the purposes of the question here, that the cause of the shifting of the belt, and thus starting up the machine was that before mentioned, a proper adjustment of the pulleys in line with it would have obviated the difficulty; and if as evidence tended to prove the defendant, through its superintendent, had notice that the machine was liable to be set in motion by the casual shifting of the belt for such cause, it was the duty of the defendant to use due care to see that the machine retained its place and that the proper adjustment of the belt in its line with and relation to the pulleys was maintained, or at least to advise the boy of the danger that he might take the precautionary means requisite to his protection.   And whether the injury to the plaintiff's son was or not occasioned by the negligence of the defendant in that respect was a question of fact which should have been submitted to the jury.   (*Donahue* v. *Drown*, 154 Mass. 21.)

Evidence on the part of the plaintiff essential to the support of his action was contradicted by that on the part of the

defendant. The comparative weight of the evidence is not the subject of consideration here. These views lead to the conclusion that the nonsuit was error, and that the judgment should be reversed and a new trial granted, costs to abide the event.

All concur with PARKER, J., except BRADLEY and VANN, J.J., dissenting, and LANDON, J., not sitting.

Judgment affirmed.