(26 App. Div. 456.)

GARVEY v. NEW YORK & C. MAIL S. S. CO.

(Supreme Court, Appellate Division, Second Department.    March 8, 1898.)

1. INJURY TO EMPLOYE—DEFECTIVE MACHINERY.

In an action by an employé to recover damages for an injury due to defendant's alleged negligence in furnishing defective machinery, it appeared that, while hoisting bags of coffee from the hold of a steamship by means of a winch, plaintiff's hand was drawn into a pulley and crushed. It was proved that the way to start the winch and keep it in motion was by pushing down a lever. Plaintiff himself testified that when he shouted to the engineer, a fellow servant, to stop the engine, he saw him trying all his endeavors to "push the lever down and stop the machine." There was no evidence that the machine was out of order, but the testimony showed that it responded with reasonable promptness to the action of the engineer. *Held,* that plaintiff had failed to establish any negligence on defendant's part.

2. SAME—ASSUMPTION OF RISKS.

A person of mature years, entering employment, accepts the risks incident thereto, and the employer is charged with no higher duty in respect to the machinery and appliances than to provide such as are suitable for the work, and to keep them in a state of repair which shall not increase the hazards of such occupation.

Appeal from trial term, Kings county.

Action by John Garvey against the New York & Cuba Mail Steamship Company. From a judgment for plaintiff for $2,793.70, and from an order denying a new trial, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Charles C. Nadal (Edward P. Mowton, on the brief), for appellant. E. J. McCrossin, for respondent.

WOODWARD, J. The plaintiff in this action was a stevedore, and had been in the employ of the defendant for seven months, and had been doing the same kind of work for several years. On the 19th day of April, 1894, while engaged with others in hoisting bags of coffee from the hold of the steamship Seneca by means of a winch or hoisting engine, his hand became entangled in a rope used as a sling, and it was drawn into the pulley at the end of the crane, and so severely crushed that it became necessary to amputate two of his fingers.

It was contended on behalf of the plaintiff that the accident was due to some neglect on the part of the defendant, "in that its said crane, and apparatus thereto belonging, were in a defective, insecure, and dangerous condition, all of which, on information and belief, was well known to the defendant, and in that it carelessly and negligently placed this plaintiff at a perilous and hazardous employment without informing him of such perils and hazards." On the trial the plaintiff testified:

That he had been in the employ of the defendant on the 19th day of April, 1894, and that "we were lifting coffee out from the ship by means of the tackle, taking the drafts that came up, lifting them right on the deck, and my business was to unhook the fall and take the coffee off, put it back to the hold, hand over hand, that way [indicating]; and the moment I had my hands on, pulling it down that way, the engine started suddenly, and, as the engine started, I hollered to the engineer (it was about that distance,—four or five feet), 'Come back! come back!

you are taking my hand in;' and I saw the man myself trying all his endeavors· to push the lever down and stop the machine. He could not stop it that time, and I was suspended in the air, hanging from the hatch, and my partner— All he had to do was to pull me off; otherwise, when my fingers went off, I would fall right through the hatch, and smash myself to pieces."

It was proven by two witnesses for the defendant, and practically by one of the witnesses for the plaintiff, that the way to start the· winch, and to keep it in motion, was by pushing the lever down; that it could move by the force of the engine only in one direction, and this only upon the affirmative action of the engineer; and the plaintiff testifies that "I saw the man myself trying all his endeavors to· push the lever down and stop the machine." There was some testimony introduced, under objections, tending to show that the machine· had not been in perfect working order on the morning of the day on which the accident occurred; but the facts stated were not sufficient to justify the conclusion that a piece of machinery which can be put in motion only by the affirmative action of the engineer could· be· so out of repair that it would, of its own motion, start up suddenly. That would be reversing the whole course of natural law, and is not to be credited, except upon the most positive and direct evidence of specific instances of such perversity on the part of things inanimate. Machinery which is out of repair often refuses to move when the impulse is given, but the idea of its starting without the aid of the engineer is absurd, and especially when the plaintiff, who was shown to be familiar with the work, testifies that he saw the engineer doing the very thing that was necessary to do to put the winch in operation.

It is a principle too well settled to require any argument at this· time that a person of mature years entering any employment accepts the risks incident to such employment, and that the employer is charged with no higher duty than to provide machinery and appliances suitable for the work, and to keep them in a state of repair· which shall not increase the hazards of such occupation. The plaintiff in the case at bar had been employed in the discharging and loading of vessels for a series of years. He knew the dangers incident to the work which he was called upon to perform, and it was his duty to exercise that care and prudence necessary to preserve himself from harm in the ordinary course of the work. As was said by Judge Parker, in delivering the opinion of the court in the case of Dingley v. Knitting Co., 134 N. Y. 552, 32 N. E. 35:

"The machine was such as was in ordinary use, and, for aught the evidence discloses, the best known. It was situated, with reference to the shafting, as were the other machines in that room, and in other mills. No special defect in its situation or construction was pointed out. No one pretended to· be· able to· assign with certainty the cause of the transfer of the belt from the loose to the tight pulley, if it was, in fact, so transferred. But, because the machine started on this and three other occasions, it is insisted that the jury had a right to infer that there existed a defect of some kind which the defendant was negligent in. not providing against, notwithstanding the precise defect was then, and has· since remained, unknown. In other words, that the jury may find that the defendant failed in the discharge of his duty towards his employé by omitting to· provide against an alleged defect in a machine in ordinary use, which, so far, no one has been able to point out,—a proposition which, if sustained, extends· the liability of the master to his servant far beyond its present boundaries, and, would be without reason to support it."

Almost equally strong is the language of the court, speaking through Judge Ruger, in the case of Dobbins v. Brown, 119 N. Y. 188, 23 N. E. 537. This was a case of an accident in a mine, in which the allegations of the plaintiff were in many respects similar to those of the case at bar. The court say that the evidence is not sufficient to support the allegations of the complaint, and comment as follows:

"There was no evidence but that apparatus and appliances, similar to the one in question, were generally in use in deep shafts for mining purposes in this country, and in some instances it appeared they were required to be used by the statutes of the states in which they were employed. No proof was given of any defect in the plan or structure of the machinery or appliances constituting the apparatus used in elevating and lowering the bucket in question, or that it was not well constructed, of good materials, in accordance with the plans generally followed in manufacturing similar apparatus."

In the case at bar the winch was such as is in ordinary use. There was no evidence that it was out of repair; but, on the contrary, the testimony of the plaintiff, as well as that of all the witnesses who in any manner touched upon this question, shows that the machine responded to the action of the engineer with reasonable promptness, and that the accident was due, not to any neglect on the part of the defendant, but to the carelessness of a fellow servant, or to his own negligence in not taking those precautions in handling a new rope which were necessary to prevent accidents.

For these reasons, the judgment of the trial court is reversed, and a new trial granted. All concur.