ANNIE JACOBSON v. JOHN R. JOHNSON.[1]

August 1, 1902.

Nos. 13,014—(144).

**Master and Servant—Safe Appliances.**
The rule laid down by this and other courts, that it is the duty of the master to use reasonable care to provide safe appliances for the use and protection of employees in his service, recognized and applied to the facts of this case.

**Dangerous Appliance—Opinion of Expert.**
Where an employee is required to work upon and about dangerous instrumentalities, the master cannot shield himself from liability for injury caused from a neglect of this duty by reliance upon the opinion of an expert as to the safety of an appliance provided by him, when it does not appear that the examination of such expert was thorough and efficient, which is a question of fact for the jury.

**Verdict—Evidence.**
Evidence considered, and *held* sufficient to sustain the finding of the jury that an employer failed to provide reasonably safe guy rods or stays to support a heavy iron crane, by reason of which neglect the stays broke, whereby the crane fell upon an employee while engaged in the master's service, at his proper place, in the line of his duty.

Action in the district court for Hennepin county by plaintiff, as administratrix of the estate of Mons E. Jacobson, deceased, to recover $5,000 for the death of decedent. The case was tried before Harrison, J., and a jury, which rendered a verdict in favor of plaintiff for the sum demanded. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Trafford N. Jayne* and *Henry C. Belden,* for appellant.
*Benton & Molyneaux,* for respondent.

LOVELY, J.
The widow of Mons Jacobson brings this action as administratrix to recover damages sustained through the death of her husband from the alleged negligence of defendant. She had a

[1] Reported in 91 N. W. 465.

verdict. Defendant moved for a new trial or judgment in the alternative, which was denied. From this order defendant appeals.

There are twenty-eight assignments of error. A careful examination of these assignments, upon a review of the entire record, leads to the conclusion that the only question worthy of consideration is the sufficiency of the evidence to sustain the verdict. This is one of the instances where counsel has deemed it important to require this court to examine every exception in the record, and, as is usual in such cases, the imposition of much unnecessary labor upon the court fails to realize the result that it has been profitable to appellant.

It was reasonably made to appear by the evidence that defendant was at the time of the accident the owner of and operating a dredge boat on Lake Minnetonka, used in the work of dredging and pulling piles. Plaintiff's intestate was one of the deck hands on the boat. An instrumentality in this work was a heavy iron crane weighing four thousand pounds, extending from the deck of the boat to an angle into the air. At its exterior was suspended a dipper and other appliances for the work. The crane was held in place at the requisite angle by means of two guy rods of iron attached to either side. These rods were stationary, they kept the crane suspended, and prevented it from falling. Plaintiff's intestate at the time of the accident was at work at his proper place on the deck of the boat. The crane and its appliances were operated by means of an engine, when, under the effect of some severe strain produced by use of the crane or engine, the guy rods both broke, when the crane fell upon plaintiff's husband, inflicting such injuries that he died therefrom.

The dredge boat had been constructed by defendant two years before the accident. The engine and boiler had been purchased from secondhand dealers of machinery. The guy rods had been in use on the steamer City of St. Louis, on Lake Minnetonka, as braces, or what are called "hog chains," for the period of eighteen years, and when that boat was broken up these rods were taken therefrom and adapted to the purpose of stays, as above stated, by defendant, who personally possessed no special knowledge or

capacity to judge of their strength or fitness for that use. A competent expert in machinery was, however, after the stays were placed upon the crane, called to do some work on the dredge boat, and informed the defendant, in answer to a question regarding the suitability of the guy rods for the new use made of them, that they were sufficient; but it does not appear that any critical scrutiny was made of such rods by this expert, or that a careful inspection thereof was given by him or any one else. The examination was, at best, casual and perfunctory.

The cause went to the jury under instructions from the court upon the duty of defendant to supply reasonably safe guy rods of sufficient strength to sustain the weight of the crane in the essential and necessary work required to be done in their use. Evidence of an expert character was received to support the claim of defendant that greater weights than that which the crane was sustaining at the time of the accident had previously been applied thereto in its actual use, from which it is urged, upon the showing thus made, that the tensile strength of the iron guy rods was demonstrated as a matter of fact; hence that the absolute conclusion follows that the breakages were not attributable to the weakness of the material therein, and the disaster was not the result of structural defects or their incapacity, but due to some cause unknown. Upon the whole evidence we are of the opinion that the adequacy of these stays to hold the crane in place was a question of fact. It appears that they had been used for twenty years; that they were not manufactured for the purpose to which defendant applied them, when they were newly subjected to extraordinary burdens and excessive strains; neither are we inclined to adopt the theory of defendant that iron will not wear out through the processes of time, nor can we hold that this conclusion should have been adopted by the jury, and if there was expert testimony tending to justify this view it seems so at variance with experience that we should not reverse this case because the jury did not accept it. It would be but a fair result from the counsel's reasoning that the guy rods were strong enough and could not have broken under strain, to suggest that they actually did break after years of long service, which might have exhausted their power of

endurance, unless the natural inference that all mundane things will wear out cannot be applied to the iron material of which the stays were composed.

It is but a repetition of the usual legal rule of duty imposed upon the employer, so often stated by this and other courts, to say that he must use reasonable care to provide safe appliances to those engaged in his service. In the structural arrangements by which the guy rods were applied to the heavy iron crane, their purpose and utility were so necessary and apparent that the sudden breakages, as in this case, were out of the usual or ordinary course of things, and not to be expected. This accident was an extraordinary one, and such as might upon its happening impose the duty upon the master of showing that the appliances he adopted were suitable and proper. But the evidence does not leave the master's liability upon this presumption alone. The size and length of the guy rods, the purpose for which they were adapted, the previous history of their use, the amount of strain continually imposed upon them, upon the evidence were fully submitted to the jury, and, in our judgment, afforded sufficient means by which to determine whether the defendant had performed his duty to provide suitable instrumentalities for the use and protection of intestate, whose life may have been forfeited through such neglect, which we must hold was for the jury to determine.

Defendant invokes the benefit of the rule that an employer may select from a competent and skilled manufacturer instrumentalities of an approved pattern, in common use, and if he has done so it is to be presumed that he has fulfilled his duty to his employee. We cannot give the benefit of this presumption to defendant in this case, for it does not apply. The defendant was the constructor of his boat; he adapted the guy rods to a novel use, without having, as appears, made any test of their capacity, or having shown that he possessed the requisite skill to determine whether they were suitable to meet the exigencies required in the new purposes to which they were adapted.

Neither can the defendant shield himself from liability upon the ground that he submitted the question of the sufficiency of these appliances to the opinion of a person who was competent to

determine their capacity. The most that can be said of this inspection by the expert whose opinion was obtained is that it was superficially made, upon a casual view, and the master cannot exculpate himself, where the duty to inspect exists, by anything less than a sufficient inspection, which is a question of fact. Tierney v. Minneapolis & St. L. Ry. Co., 33 Minn. 311, 23 N. W. 229.

Upon review of the entire record, under a fair and impartial submission to the jury of the issues by the trial court, which gave the defendant all that he was entitled to have, we have easily reached the conclusion that the verdict must be sustained.

Order affirmed.