[No. 4697.   Decided December 3, 1903.]

· ALBERT G. TOWLE, *Respondent,* v. STIMSON MILL COM-
PANY, *Appellant.*[1]

33  305
34  474
35  227

MASTER AND SERVANT—NEGLIGENCE—DEFECT CAUSING THE MA-
CHINE TO START AUTOMATICALLY—EVIDENCE—SUFFICIENCY—QUES-
TION FOR JURY.   In an action for personal injuries to a sawyer sus-
tained by reason of the automatically starting of a ten-block shingle
machine, a verdict for the plaintiff should not be disturbed
where there was evidence that the defendant knew that the ma-
chine had started up automatically, due to defects in the clutch
which were out of sight and not known to plaintiff, that such a
machine was unsafe, and that the defect could be remedied by
a spring not made or sent out with such machines, that the ma-
chine was repaired five days before the accident, there being con-
flict in the testimony as to whether it was properly repaired and
as to every material point, although such machines were in com-
mon use without the spring in the clutch.

SAME—PROOF OF NEGLIGENCE—VERDICT—CONCLUSIVENESS.   While
negligence must be shown affirmatively, it may be deduced as an
inference from other facts proven, and the courts will not inter-
fere with a verdict where there is substantial conflict in the testi-
mony.

SAME—NEGLIGENCE—INSTRUCTIONS.   Certain instructions on
the subject of negligence held properly refused or sufficiently cov-
ered in the general charge.

SAME—EVIDENCE OF PRIOR DEFECTS AND REPAIRS.   In an action
for personal injuries to a servant, evidence of defects in a ma-
chine prior to the making of certain repairs, is admissible where
the sufficiency of such repairs was one of the main issues in the
case.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered April 18, 1903, upon the ver-
dict of a jury rendered in favor of plaintiff for $5,500
damages for personal injuries sustained while operating
a ten-block shingle machine, after overruling defendant's

[1]Reported in 74 Pac. 471.

motions for a nonsuit, for judgment notwithstanding the verdict, and for a new trial. Affirmed. . . :

*Root, Palmer & Brown,* for appellant. It was not shown that the master knew of the defect. The machine ran satisfactorily for five days after the repairs, and the defect could not have been discovered by ordinary care and inspection. *Wilson v. Northern Pac. R. Co.,* 31 Wash. 670, 71 Pac. 713; *Hansen v. Seattle Lumber Co.,* 31 Wash. 604, 72 Pac. 457; *Patton v. Texas Pac. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275. An employer is not required to furnish the best and newest machinery; the test is general use. *Bernhard v. Reeves,* 6 Wash. 424, 33 Pac. 873; *Jennings v. Tacoma R. & M. Co.,* 7 Wash. 275, 34 Pac. 937; *Hoffman v. American Foundry Co.,* 18 Wash. 287, 51 Pac. 385; *Hogele v. Wilson,* 5 Wash. 160, 31 Pac. 469; *Anderson v. Inland Tel. etc. Co.,* 19 Wash. 575, 53 Pac. 657. The servant was in as good a position as the master to know of the defect. *Glass v. Colman,* 14 Wash. 635, 45 Pac. 310; *French v. First Ave. R. Co.,* 24 Wash. 83, 63 Pac. 1108; *Wilson v. Northern Pac. R. Co., supra.* And he assumes the danger from the machinery under his care. *Week v. Freemont Mill Co.,* 3 Wash. 629, 29 Pac. 215; *Schulz v. Johnson,* 7 Wash. 403, 35 Pac. 130; *Olson v. McMurray Cedar L. Co.,* 9 Wash. 500, 37 Pac. 679; *Danuser v. Seller & Co.,* 24 Wash. 565, 64 Pac. 783; and the *French, Hoffman,* and *Anderson* cases, *supra.* The starting of the machine was equally and more plausibly attributable to several causes besides the defect in the clutch, and for this reason the master is not liable. *Weideman v. Tacoma R. & M. Co.* 7 Wash. 517, 35 Pac. 414; *Mitchell v. same,* 9 Wash. 120, 37 Pac. 341; *Sauer v. Union Oil Co.,* 43 La. An. 699, 9 South. 566; *Hansen v. Seattle Lumber Co., supra.* The fact that a machine starts automatic-

ally is not sufficient to establish negligence. *Weideman v. Tacoma R. & M. Co., supra;* Bailey, Master & Ser., §§ 1614, 1616, 1665, 1599; *Dingley v. Star Knitting Co.,* 134 N. Y. 552, 32 N. E. 35; *Redmond v. Delta L. Co.,* 96 Mich. 545, 55 N. W. 1004; *Robinson v. Wright,* 94 Mich. 283, 53 N. W. 938; *Kuhns v. Wisconsin etc. R. Co.,* 70 Iowa 561, 31 N. W. 868; *Hughes v. Oregon Imp. Co.,* 20 Wash. 294, 55 Pac. 119; *Soderman v. Kemp,* 145 N. Y. 427, 40 N. E. 212; *Roberts v. Boston etc. R. Co.,* 83 Me. 298, 22 Atl. 174. The existence of a defect or the happening of an accident does not establish negligence. Dresser, Employer's Liability, p. 209; 1 Bailey, Master & Ser., §§ 103, 104, 1613, 1665-6; *Kirby v. Rainier-Grand Hotel Co.,* 28 Wash. 705, 69 Pac. 378; *Decker v. Stimson Mill Co.,* 31 Wash. 522, 72 Pac. 98; *Brymer v. Southern Pac. R. Co.,* 90 Cal. 496, 27 Pac. 371; *Texas Pac. R. Co. v. Thompson,* 71 Fed. 531; *Snodgrass v. Carnegie Steel Co.,* 173 Pa. St. 228, 33 Atl. 1104; *Indianapolis etc. R. Co. v. Toy,* 91 Ill. 474; *Huff v. Austin,* 46 Ohio St. 386; *Toledo etc. R. Co. v. Moore,* 77 Ill. 217. The circumstance that a servant was injured by defective machinery does not prove negligence. *Duntley v. Inman etc. Co.* (Ore.), 70 Pac. 529; *Simpson v. Pittsburg Loc. Works,* 139 Pa. St. 245, 21 Atl. 386; *Texas & Pac. R. Co. v. Barrett,* 166 U. S. 617, 17 Sup. Ct. 707; *Patton v. Texas & Pac. R. Co.,* 179 U. S. 658, 21 Sup. Ct. 275; *Wojciechowski v. Spreckels' Sugar Refining Co.,* 177 Pa. St. 57, 35 Atl. 596; *Brownfield v. Chicago etc. R. Co.,* 107 Iowa 254, 77 N. W. 1038; *Olson v. Great Northern R. Co.,* 68 Minn. 155, 71 N. W. 5.

*Reynolds, Park & Ingersoll* (*Wilshire & Kenaga,* of counsel), for respondent. The evidence in this case sustains the verdict. *Hencke v. Babcock,* 24 Wash. 556, 64

Pac. 755; *Gulf C. etc. R. Co. v. Haden* (Tex.), 68 S. W.
530; *Connors v. Durite Mfg. Co.,* 156 Mass. 163, 30 N.
E. 559; *Thiel v. Kennedy,* 82 Minn. 142, 84 N. W. 657;
*Monmouth Min. etc. Co. v. Erling,* 148 Ill. 521, 36 N. E.
117, 39 Am. St. 187; *Shoemaker v. Bryant Lumber etc.
Co.,* 27 Wash. 637, 68 Pac. 380; *Roberts v. Port Blakely
Mill Co.,* 30 Wash. 25, 70 Pac. 111; *Goldthorpe v. Clark-
Nickerson L. Co.,* 31 Wash. 467, 71 Pac. 1091.    The
sufficiency of the inspection was a question for the jury.
*Jacobson v. Johnson,* 87 Minn. 185, 91 N. W. 465.

PER CURIAM.—This was an action for personal injuries
brought by respondent, Albert G. Towle, against appellant,
Stimson Mill Company (a corporation), in the superior
court of King county.   Verdict for respondent.   This is an
appeal from the judgment entered thereon by the Stimson
Mill Company.

Appellant makes six assignments of error, the first four
of which present practically the same question—that there
was not sufficient evidence adduced at the trial of the cause
to justify the verdict under the issues. The fifth assignment
relates to the giving of certain instructions to the jury, and
the refusal to give certain others requested by appellant.
The sixth and last assignment alleges that the trial court
erred in admitting certain testimony.   The evidence is
voluminous, but it is important that its salient features
should be noticed.

On the 23rd day of May, 1902, at the city of Ballard,
respondent was in the employ of appellant company in its
shingle mill, in charge of and operating a ten-block ma-
chine known and designated as Machine No. 1, in the ca-
pacity of a sawyer, when he sustained the injuries of which
he complained.   A machine of this description consists of
a large wheel, two circular saws, a clutch, certain pulleys,

shafts and bearings. There is a massive iron or steel wheel called "the rim", about ten feet in diameter. This wheel revolves on bearings four feet from the floor. It has ten compartments, each of which is intended to receive a shingle block. It was one of the sawyer's duties to place the blocks into these openings. As this large wheel revolves, these blocks are brought in contact with the saws set horizontally underneath the "rim", thus cutting up the blocks into shingles. The remnant of a block is called a "spault," which is dropped out by striking a spault pin; there being one pin for each compartment, projecting about one inch above the wheel, and going around with it.

The machine was put in motion and stopped by means of a clutch, consisting of an iron pully with a steel band about the same termed the "clutch band." This band was tightened upon, or loosened from, the pully by a wedge at the end of a rod extending under the machine from the position of the sawyer on the opposite side of the machine, about nine feet from his stand. This rod was moved by a lever at the sawyer's position, in front of and near his knees. The clutch was out of sight, and about nine feet from where the sawyer stood while operating the machine. The friction of the clutch band upon the iron pulley put the machine in motion. When the band was open, the friction was off and the machine was at rest. Pressing down on the lever starts the machine; raising it stops it. If, when the machine is at rest and the lever is up, it should start up automatically, the lever would remain in the same position.

At the time of the accident, respondent had been in the employ of the appellant at its mill about three and one-half years, off and on, and had worked on the machine in question as a sawyer from two and one-half to three months

just prior to the accident. He was not a machinist. If the machine got out of repair, it was the sawyer's duty to call the matter to the foreman's attention, who either made the repairs himself or supervised the work. It was among the foreman's duties to inspect each machine in the mill twice each day—at noon and after quitting work at six o'clock in the evening. The machine was inspected by the foreman at noon about two and one-half hours before the accident.

The gravamen of respondent's complaint is that he was injured by reason of the defective clutch in, and a part of, the machine, causing it to start up automatically without warning when at rest while he was, in the line of his duty, adjusting a spault pin; and it is alleged that the pin caught in the sleeve of his jumper and dragged his right arm into the cogwheels on the side of the rim, causing him serious and permanent injuries; and that he had no knowledge or warning of such defect, which was known, or should have been known, by appellant company. The testimony on behalf of respondent tends to support his contentions in that regard. His testimony also tended to show that this machine was installed at appellant's mill ten or eleven years previous to the accident, that it had on previous occasions started up suddenly of itself, and was unsafe for the purposes intended. Respondent's and appellant's expert witnesses agreed that, if a ten-block machine should start up automatically, there must be some defect in the clutch. Gus Brinkman, foreman of the appellant company for some time previous to March, 1901, in response to the questions propounded to him by respondent's counsel, testified as follows:

"Q. Did you ever know of that machine starting of itself automatically? A. I did. Q. State to the jury what caused that machine to start of itself, and what you did,

if anything, to remedy that defect? A. Saw dust would get in there, the spring being too tight; I attached a spring to it to open this band. Q. Now then, Mr. Brinkman, proceed. A. The band being too tight I put on a spring to spread it, so as to relieve the band from the iron pulley which runs on the inside of that band there. . . . Q. Was that spring put there about the time that you left the mill? A. It was. Q. When did you leave the mill? A. Somewhere about the middle of March, a year ago. Q. And up to that time that spring was there to prevent the starting of the machine of itself? A. Yes, sir. . . . Q. Would the machine be safe—would you consider a ten-block machine safe—this particular ten-block machine, without that spring which you put there to prevent— A. No, sir; it would not be safe. Q. Did you ever notify or warn the men who were working on that machine on account of this defect? A. I did."

This witness said on cross-examination that all such machines ought to have springs on them, but that they do not come with them. Mr. Brinkman was corroborated by the testimony of several witnesses on behalf of respondent, who were former employees of appellant, as to the necessity of putting that spring on the clutch to hold the band apart, so that it could not start the machine up while at rest, and that this particular machine was not safe without such spring; that it had started up of itself at different times previous to the accident; and that a ten-block machine starting automatically is defective.

The respondent testified in his own behalf, that he raised the lever and stopped the machine to adjust a spault pin, when the machine suddenly started up, and the pin caught his sleeve, dragged his right arm into the cogwheels at the side of the rim, and caused the injuries; that he had no notice whatever at that time of any defects in the machine; and that they were not obvious. There was testi-

mony corroborating him to the effect that the machine was
at rest when he proceeded to make the adjustment of the
"pin", and in regard to the machine starting automatic-
ally, and that the defects in the clutch were out of sight,
and that this machine was defective in and about the
clutch band.

On behalf of appellant, three dealers in ten-block ma-
chines, and several expert operators of such machines,
some of whom were employees of the Stimson Mill Com-
pany, testified that no spring was manufactured or sent
out with these machines to be attached to the clutch band,
and they never saw a machine of that description with a
spring so attached. Some of appellant's witnesses also
testified that the clutch band, being made of spring steel,
was itself a spring. Witness Joseph Donoghue testified
that he was present when the machine in question was
installed, and that there was no spring on the clutch band
at that time. There was considerable testimony on behalf
of appellant, that such machines were in general use in
shingle mills, and were of standard grade; that this par-
ticular machine, though an old model, was reasonably safe
and suitable for the purposes intended; that the clutches
on the old and new models worked on the same principle.

It further appeared, that on the 18th day of May, 1902,
five days prior to the accident, the clutch was taken out of
the machine to be repaired; that the repairs were made by
one Hackett under the direction of Mr. Donoghue, the fore-
man; that from that time to the happening of the accident
there was no hitch in the operation of the machine, and it
worked satisfactorily after the accident without repairing
the clutch. Appellant's evidence further tended to show
that respondent assisted in repairing the clutch—a state-
ment, however, which was denied by respondent while on

the witness stand. The evidence is voluminous and conflicting as to whether the mechanism of the clutch was in plain view, and, if defects existed, whether respondent could, by the exercise of ordinary diligence, have discovered them. Such conflict cannot be reconciled. David McVay, a manufacturer of shingles of almost twenty years experience, familiar with the mechanism of ten-block machines similar to the one in question, a witness for appellant, testified that the clutch was not open and in plain view: "It is on the back part of the machine, and you cannot see it at all times—not unless you get in and examine closely, and then it is difficult to see it."

There was some conflict in the testimony in regard to the "clutch" being properly repaired on the 18th day of May, 1902, previous to the accident. C. A. Donoghue, appellant's foreman at the time of the accident, testified, that he had inspected this machine on the day of the accident at the noon hour; that it was in first class condition; that his orders were to repair any defects promptly, which were invariably followed; that, when respondent was caught in the cogwheels, witness was forty or fifty feet from the machine; that it took him a few seconds to get over there, when he helped pull the rim back. He testified also that the lever was down at that time, which was denied by respondent, and by Swayze, the block piler at this machine, testifying for respondent.

The foregoing is, in substance, all of the evidence going to the questions of negligence and contributory negligence. Plainly, there was a conflict on every material fact, and, if the facts testified to by the respondent entitled him to recover, the verdict is not insufficient for want of evidence to support it. It seems to us that the facts do warrant a recovery. It is true that the fact that an employee is

injured while in the service of the employer carries with it no presumption of negligence on the part of the employer, and that the employee must show affirmatively that the employer has been guilty of negligence, in order to warrant a recovery. This court has repeatedly so held in effect. *Hansen v. Seattle Lumber Co.,* 31 Wash. 604, 72 Pac. 457. In *Shannon v. Consolidated etc. Min. Co.,* 24 Wash. 119, 64 Pac. 169, we said: "It is settled in this country, as a general rule, that the master is charged with the duty of furnishing his servant a reasonably safe place in which to work, and impliedly says to him that there is no other danger in the place than such as is obvious and necessary;" and in *Hoffman v. American Foundry Company,* 18 Wash. 290, 51 Pac. 385, we held that: "The law is well settled that the master discharges his duty when he provides machinery that is of ordinary character and reasonably safe. . . . Employers are not insurers and the law recognizes that absolute safety is unattainable. They are liable for the results of their negligence, and not for the dangers necessarily connected with the service." See also: *Decker v. Stimson Mill Co.,* 31 Wash. 522, 72 Pac. 98; *Goldthorpe v. Clark-Nickerson Lumber Co.,* 31 Wash. 467, 71 Pac. 1091. But it is equally true that negligence is proved as any other fact or facts are proved; it may be shown by direct evidence, or it may be deduced as an inference from other facts proven; and, when it is once shown by substantial testimony, its weight and sufficiency is a question for the jury.

The case of *Hencke v. Babcock,* 24 Wash. 556, 64 Pac. 755, was in some of its features similar to the one at bar. The action was brought by respondent, Hencke, against appellants, Babcock and wife, to recover compensation for personal injuries sustained by respondent while he was in

the employ of appellants as a separator tender in their business of threshing grain. The separator was propelled by appellant's steam engine, alleged to have been defective—liable to start automatically and suddenly, after it had been stopped by the engineer. The defects in the engine complained of were known to appellants and unknown to respondent, who was not an engineer. While respondent was engaged in the removal and substitution of the concaves, and straightening the teeth on the concaves and cylinder, when the machine was at rest, the separator suddenly, without warning, started automatically, caught his hands between the teeth of the cylinder and the teeth on the concaves, and injured him. At page 560, in the opinion of the court, the following language is used:

"It must have been manifest to the jury from the evidence that a man of ordinary prudence would have a right to expect that when the engine was stopped it would remain stationary until started by the engineer in charge. The testimony shows that the engine was stopped for the express purpose of giving Hencke an opportunity to adjust the teeth on the cylinder and concaves, and, if the jury believed from the evidence that he had no knowledge of any defect in this engine, then they were justified in finding that he was acting the part of an ordinarily prudent and careful man when he was doing this work, and that he had a right to believe the power would remain inactive until he had finished and had so informed the engineer."

The question of contributory negligence was also involved in that case, and speaking thereon we said:

". . . that the question of contributory negligence is for the jury to determine from all the facts and circumstances of a particular case, and that it is only in rare cases that the court would be justified in withdrawing it from the jury."

In *Gardner v. Michigan Central Railroad*, 150 U. S. 349, 361, 14 Sup. Ct. 140, 37 L. Ed. 1107, the court said:

"The question of negligence is one of law for the court
only where the facts are such that all reasonable men must
draw the same conclusion from them, or, in other words,
a case should not be withdrawn from the jury unless the
conclusion follows as matter of law that no recovery can
be had upon any view which can be properly taken of the
facts the evidence tends to establish."

*Mooney v. Connecticut River L. Co.,* 154 Mass. 407, 28
N. E. 352, was an action of tort for personal injuries. At
page 409, in the opinion, the court uses this language:

"There was evidence that the carriage of the sawing ma-
chine started up, and injured the plaintiff, when it was
left at rest with the steam shut off, and the lever locked
which was used to start and stop it. It was proved and
not disputed that a machine which would do that was
improperly constructed, or improperly adjusted, and was
unsafe. There was evidence that the defendant's fore-
man knew several days before the accident, that the ma-
chine had 'run away,' or started up when no one was near
it. The jury were warranted in finding that the defend-
ant was negligent in not seeing that it was properly con-
structed and adjusted, so as to be safe when it was origi-
nally put in position, or in not discovering its dangerous
condition and making it safe before the accident."

And the court held the plaintiff entitled to recover although
he knew that the machine had run away. To the same ef-
fect is *Connors v. Durite Mfg. Co.,* 156 Mass. 163, 30 N.
E. 559. The plaintiff in that case was a foreman, and was
injured by the engine starting up while at rest by reason
of a leak in the throttle-valve. It appears that down to the
time of the accident no inspection of the throttle-valve was
made, which could readily have been done. The court
held that:

"While a master may delegate to competent servants the
making of ordinary repairs such as a machine requires
from day to day, yet as to other repairs the master cannot
escape responsibility by merely showing that he has em-

ployed intelligent and competent servants, and has furnished them with suitable materials; but he must exercise a reasonable care and supervision over them, and see that they do their duty. . . . The fact, therefore, that the engine had some three weeks before been overhauled and repaired does not necessarily exempt the defendant from liability."

See, also, *Gulf, C. etc. R. Co. v. Haden* (Tex. Civ. App.), 68 S. W. 530; *Jacobson v. Johnson,* 87 Minn. 185, 91 N. W. 465.

The able counsel for appellant contend that a machine starting automatically is not evidence of negligence. They cite a number of cases to the effect that, as between master and servant, the mere happening of an accident to the latter does not render the master liable, unless he is guilty of negligence, which must be alleged and proved; among which is the case of *Dingley v. Star Knitting Co.,* 134 N. Y. 552, 32 N. E. 35, where the plaintiff's minor son was injured by a machine starting automatically. No defect in the machine was shown. On page 558, the court applied the law of the case to the facts as follows:

"Now in the light of the evidence to which we have referred, it seems to be apparent that, assuming it to be true that the machine started on three occasions testified to by Dingley, the inference legitimately deducible from it is not that the machine was defective, but rather, that in his haste to go home, of which acknowledgment is made, he failed to shift the belt entirely from the tight to the loose pulley, thus making it possible for it to run on again and start the machine in motion."

But in the case at bar, as we have shown, the testimony on behalf of respondent and of appellant was in direct conflict as to the condition of the clutch and clutch band on this particular machine, at and before the time of the accident; and also on the question whether the clutch was

properly repaired and adjusted in the machine a few days before respondent received his injuries, as well as on the question whether the alleged defects were open or concealed. This is not, therefore, a case of a machine starting automatically without any apparent cause. On the contrary, if the respondent's testimony is to be believed, there was a cause for the starting of the machine, which was known to the appellant, or could have been known by the exercise of reasonable care. The cases cited are, for this reason, not in point, and it is not necessary to discuss their effect on a question of fact to which they might be applicable.

After a careful examination of the record, we think there was sufficient testimony adduced at the trial to maintain the material issues tendered in respondent's behalf. And when there is a substantial conflict in the evidence the courts will not interfere and set the verdict of a jury aside. *O'Rourke v. Jones*, 22 Wash. 629, 61 Pac. 709. We are therefore of the opinion that the trial court committed no error in denying appellant's several motions for a nonsuit, for judgment in its favor on the pleadings and evidence, and for a new trial.

The appellant contends that the trial court erred in refusing to give certain instructions to the jury, as requested. Exceptions were taken to each refusal. Nine of such proposed instructions appear in the record. We have examined *seriatim* the instructions given by the superior court. The charge was full and explicit. We think that the propositions of law were correctly stated by the judge, and the facts fairly submitted to the jury, in consonance with the legal principles enunciated in this opinion; that some of appellant's requests, while they contain correct abstract propositions, do not apply to the evidence; that as to the

remaining requests they were sufficiently covered by the general charge. *Einseidler v. Whitman County,* 22 Wash. 388, 60 Pac. 1122; 2 Thompson, Trials, § 2352.

The trial court did not err in admitting testimony as to the defects in the machine prior to the 18th of May 1902, at the time the clutch band was repaired. The nature and sufficiency of such repairs was one of the main issues in the case. See *Connors v. Durite Mfg. Co., supra,* and authorities above cited.

No reversible error appearing in the record, the judgment of the superior court must be affirmed, and it is so ordered.