[No. 10622. Department Two. April 28, 1913.]

RICHARD E. WAINWRIGHT, *Respondent*, v. UNITED STATES
LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT — INJURIES TO SERVANT — NEGLIGENCE—EVI-
DENCE—SUFFICIENCY. There is sufficient evidence of negligence to
sustain a recovery by an off-bearer at a cut-off saw, injured when
rolls conveying a timber reversed automatically whereby he was
struck by the timber and brought in contact with the saw, where it
appears that the rolls were out of repair and frequently reversed au-
tomatically, when if properly constructed they would not have done
so, and that the cut-off saw should have had a stop upon it to pre-
vent its swinging out where it could come in contact with an em-
ployee.

TRIAL—INSTRUCTIONS—PERTINENCY. Instructions excepted to on
the ground that there was no evidence on the subject-matter to
which they relate, will be sustained where their pertinency depends
upon the view taken of the evidence, and as construed by the court,
there was evidence upon the subject of each instruction complained
of.

TRIAL—INSTRUCTIONS—REQUESTS. It is not error to refuse to give
instructions in the language requested when they are sufficiently
covered in the general charge.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered December 30, 1911, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an off-bearer in a
sawmill. Affirmed.

[1]Reported in 131 Pac. 820.

*Ballinger, Battle, Hulbert & Shorts*, for appellant.

*Cooley & Horan, R. Mulvihill,* and *A. M. Wendell,* for respondent.

FULLERTON, J.—The appellant, in the year 1910, owned and operated a sawmill located at Darrington, in this state. The respondent was employed therein as off-bearer at the cut-off saw, and was injured by coming in contact with such saw. This is an appeal from a judgment in his favor, entered in an action brought to recover damages for such injury.

The saw at which the respondent was injured was set in a swinging frame, hung in such manner that the saw could be used to trim and cut into proper lengths cants and other timbers brought to it from the head saw of the mill. The means used to bring the timbers to the saw were a series of rolls, made to revolve by being geared to the power shaft of the mill. After the timbers were properly trimmed at the cut-off saw, they were transferred either to the pony saw or to the edger at the end of the mill in the opposite direction from the head saw. Between the cut-off saw and edger was another series of rolls operated in a manner similar to these first described, by which the timbers designed for the edger could be carried from the saw to that machine. These rolls were controlled by a lever placed near the stand of the person operating the cut-off saw, and could be made to stand still, go forward or reverse, at the option of the person handling the lever.

The respondent commenced work at the appellant's mill four days prior to the time he was injured. He commenced work at the cut-off saw on the morning preceding his injury. His duties in that position were to take care of the refuse matter from the saw, and assist the sawyer in handling the timbers brought to the saw for cutting. Some three or four hours after the work began on the morning of the accident, a piece of timber of considerable length was sent down to the cut-off saw from the head saw. The timber contained a

flaw near its middle which it was necessary to cut out. A dimension piece some sixteen feet in length was cut from the end and started down towards the edger by means of the rolls. The cut-off sawyer then proceeded to cut off a block from the timber which contained the flaw, and the respondent stood facing him ready to receive and carry away the piece cut off. As he thus stood, with his back towards the direction of the edger, the rolls in some manner became reversed, and brought the timber that had been started towards the edger back again to the cut-off saw. As it came back, it turned somewhat upon the rolls, so that the end towards the respondent projected to the side on which he was standing. As it came forward, the end of the timber struck the respondent and pushed him forward to a place immediately in front of the cut-off saw just as its operator had succeeded in pulling the saw through the timber he was cutting. The result was that the saw came in contact with the respondent's back and left shoulder, inflicting upon him the injuries for which he sues in this action.

The grounds of negligence on which the respondent based his complaint were three: namely, (1) that the appellant suffered and permitted the rolls and the mechanism controlling the same to become and remain in a defective and dangerous condition, so that the rolls would, without any manipulation of the lever intended to control them, automatically reverse, thereby bringing material which had been carried to the edger back from that machine to the cut-off saw; (2) that it suffered and permitted the cut-off saw to become and remain in a defective condition in that there was no stop provided to prevent the saw from swinging beyond the rolls into the space provided for the persons working with the saw to stand, and that to allow it to so swing was both dangerous and unnecessary; and (3) that the appellant was guilty of negligence in directing the respondent to work in a position of special and unnecessary peril without giving him notice or warning of the danger to be encountered.

The principal contention of the appellant is that the evidence is insufficient to justify the verdict—the special point being that there was no evidence of negligence on the part of the appellant. We have not, however, been able to take this view of the record. A number of witnesses testified to the fact that these rolls frequently reversed automatically, that they had observed them do so at different times for many months immediately prior to the accident, and one witness testified that it was common talk among the employees of the mill that these particular rolls were out of repair. A millwright, called as an expert, testified that rolls that would thus start automatically were either improperly constructed or improperly adjusted, and that properly constructed and adjusted rolls would remain stationary until put in motion by the act of the person controlling them. The respondent testified that he was injured some four hours after he had begun work at the cut-off saw, and on the fourth day after he had begun work in the mill, and that he was not told, and did not know of, the tendency of these rolls to reverse and bring back timbers that had been sent forward to the edger until after he received his injury. There was evidence also that a properly adjusted cut-off saw should have a stop upon it to prevent its swinging too far into the space beside the rolls, and the respondent testified that if this saw had been so adjusted he would not have been injured.

We think there was here sufficient evidence to carry the question of negligence to the jury. It is true that the respondent was unable to point out the specific defect that caused these rolls to reverse. But having shown that they actually reversed automatically, and that properly constructed rolls do not so reverse, the jury were warranted in finding that the appellant was negligent in not having them properly constructed and adjusted before it put the respondent to work thereon. *Donahue v. Brown*, 154 Mass. 21, 27 N. E. 675 ; *Mooney v. Connecticut River Lum. Co.*, 154 Mass.

407, 28 N. E. 352; *Towle v. Stimson Mill Co.*, 33 Wash. 305, 74 Pac. 471. We conclude, therefore, that the court did not err in refusing to sustain the challenge to the sufficiency of the evidence.

The appellant has excepted to a number of the instructions given by the court, not, as we understand, because they do not state correct principles of law, but because there was no evidence before the jury on the subject-matter to which they relate. For example, the court gave the following instructions, to which exceptions were taken:

"If you should find under the evidence that said defendant was guilty of negligence in any one of the three particulars above mentioned, and that such negligence on the part of the defendant was the proximate cause of the injury to the plaintiff, you are then instructed that your verdict would be for the defendant.

"I instruct you that if you should find from the evidence that any of the appliances mentioned in the complaint were defective in any particular as charged in the complaint, then if you should further find that such defects existed for such length of time that the employer, in the exercise of ordinary care, could or should have discovered such defect or defects, then I instruct you that it is your duty to find that the defendant did, as a matter of law, know of such defective condition.

"You are instructed that if the employer, knowing the existence of any defect in any machine or appliance, places an employe to work upon or about such defective machine or appliance without notifying the employe of the existence of such defect, and if the employe while so employed, and without fault on his part, is injured as the proximate result of such defect, then the employer is liable to the employe for such injury."

But it seems to us that these instructions were clearly pertinent, both to the issues and the facts shown by the evidence. The "three particulars" referred to in the first instruction quoted was a statement by the court of the grounds of negligence charged against the appellant in the complaint, an outline of which we have heretofore given, and, as we have

shown, there was clearly some substantial evidence that the appellant was negligent in each of the particulars alleged. The second instruction was pertinent in the light of the fact that there was no direct evidence charging the appellant with knowledge of the fact that the rolls would automatically reverse, and the third is pertinent, since the respondent testified that he was not informed of any defect in the rolls at the time he was told to go to work thereon. So with the exceptions taken to other instructions. Their pertinency depends upon the view taken of the evidence; and since we disagree with the construction the appellant puts on the evidence, we cannot hold the instruction erroneous.

Certain proposed instructions on the question of contributory negligence were requested which the court refused to give. But in so far as they were pertinent, they were covered by the court's general instructions. This is a sufficient compliance with the rule, as in this jurisdiction it is not necessary to give a requested instruction in the language and form submitted, even though it may be pertinent and in other respects unobjectionable.

The judgment is affirmed.

MOUNT, MAIN, ELLIS, and MORRIS, JJ., concur.