[No. 13108.   Department Two.   April 1, 1916.]

IDA M. TRAVIS, *Respondent*, v. ANDREW R. SCHNEBLY,
*Appellant*.[1]

TRIAL—INSTRUCTIONS—AS A WHOLE—BREACH OF MARRIAGE PROMISE. In an action for breach of promise of marriage, instructions to the effect that, in case of postponements on account of plaintiff's health, the defendant was in duty bound to wait a reasonable length of time after the last postponement, are not erroneous in failing to state that the postponement must have been mutual, where in earlier instructions the court repeatedly told the jury that the postponements to be considered were those that were consented to by the defendant; since the instructions must be considered as a whole.

BREACH OF MARRIAGE PROMISE — EVIDENCE — SUFFICIENCY.  A verdict for $4,000 for breach of marriage promise is not unsupported by the evidence in that it appeared that the plaintiff was afflicted with maladies at the time of the engagement justifying the breach, where there was evidence that she was completely cured by an operation before the time for performance.

Appeal from a judgment of the superior court for Garfield county, Miller, J., entered January 8, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for a breach of promise.   Affirmed.

*John L. Sharpstein* and *Kuykendall & M'Cabe*, for appellant.

*John C. Applewhite, Oscar Cain*, and *John C. Hurspool*, for respondent.

HOLCOMB, J.—This is an action for damages for breach of promise of marriage, and was before us on a former appeal, decided in *Travis v. Schnebly*, 68 Wash. 1, 122 Pac. 316, Ann. Cas. 1913 E. 914, 40 L. R. A. (N. S.) 585.   Upon the remand of the case, the pleadings were amended in some particulars, but in substance the same affirmative defenses as formerly were interposed by appellant, and the case was tried upon

[1]Reported in 156 Pac. 400.

substantially the same issues.  On the former appeal, the case was reversed because of the lower court's refusal to give defendant's requested instruction number nine, as follows:

"If after plaintiff and defendant became engaged the plaintiff became too ill to enter into the marriage relation, the defendant would not be required to wait an unreasonable length of time for her to recover, and if you find from the evidence that she was thus ill, and the defendant waited as long as was reasonable under all the circumstances for her to recover and she had not recovered, then he had a perfect right to withdraw from the engagement and your verdict should be for the defendant."

The foregoing was given at the second trial as instruction number fourteen.  In addition to that instruction, the court also gave an instruction numbered sixteen, as follows:

"Qualifying instructions numbered 11, 12, 13, 14, and 15, you are instructed that if you find that the marriage between the plaintiff and defendant was postponed from time to time on account of the illness of plaintiff, then the defendant would be required to wait a reasonable time after the last postponement for her recovery before breaking his promise of marriage, and if you find that the defendant did not wait a reasonable time after the last postponement was made for the recovery of plaintiff's health before breaking his promise of marriage, if you find that defendant did break the same, he would be liable to plaintiff for damages therefor.  It is for you to determine from all the facts and circumstances of this case as to what would constitute a reasonable time, and you are authorized to consider along with all the other facts and circumstances proven on the trial, the length of the engagement, the number of times the marriage was postponed and the condition of plaintiff's health at the time the marriage promise is alleged to have been broken, and from all of these things determine whether or not a reasonable time had transpired after the last postponement of the marriage before the promise of marriage was broken by defendant, if you find that he did break such promise."

It is contended by appellant that the insertion after the words "a reasonable length of time" of the words "after the

last postponement," constituted error in the above and other
following instructions excepted to, in that the jury is told
that the defendant was in duty bound to wait a reasonable
length of time after the last postponement before breaking
the engagement, without qualifying the word "postpone-
ment" so as to instruct the jury that such postponement must
have been mutual. It is argued that, under these instruc-
tions, the defendant could be required to wait a lifetime
against his will. In the former decision, at page 5, this court
used the following language:

"When it became manifest that by reason of poor health
she could not marry, postponements were made awaiting her
recovery. This constituted a modification of the original
contract and imposed upon appellant the duty to wait a rea-
sonable time for her recovery."

This became and was the law of the case, and the trial
judge attempted in his instructions to apply the same as the
law of the case. We have carefully examined all the instruc-
tions upon the subject of postponement by the parties given
by the trial judge, and find that, in earlier instructions, par-
ticularly five and six, the court repeatedly told the jury that
postponements, if any, "consented to by the defendant" were
the postponements which were to be considered. We think,
therefore, that, in the instruction numbered eleven and fol-
lowing instructions, there was no confusion possible in the
minds of the jury, for the idea must have been fully con-
veyed to them that the postponements to be considered were
postponements mutually agreed to or accepted and acquiesced
in by the parties. The instructions must be construed as a
whole and if, as a whole, they correctly state the law, error
cannot be predicated upon a particular part which is ampli-
fied and explained by other instructions. *McIlwaine v. Ta-
coma R. & P. Co.*, 72 Wash. 184, 129 Pac. 1093; *Wain-
wright v. United States Lumber Co.*, 73 Wash. 222, 131 Pac.
820; *North Bend Lumber Co. v. Chicago, Milwaukee & Puget*

*Sound R. Co.*, 76 Wash. 232, 135 Pac. 1017; *Murray v. Wishkah Boom Co.*, 76 Wash. 605, 137 Pac. 130.

A painstaking examination of all the instructions convinces us that the trial judge carefully instructed the jury upon all the issues raised by the pleadings of both parties, in accordance with the law. There is conflict of evidence in regard to the later postponements, but there is ample evidence to support the contention of the respondent that, after the fall of 1908, there was no postponement of the date of the marriage by her or agreed to by her. Letters from appellant to respondent in January and March, 1909, show that he was then endeavoring to end the engagement. The testimony of respondent is that she did not consent thereto. The theory and position of appellant were fully covered by the court's instructions. There was no error in the giving and refusing of instructions.

It is further contended by appellant that he was justified in breaking his engagement with a woman afflicted with the maladies with which respondent has been afflicted up to at least 1905. The decision of this court on the former appeal is cited to the effect that,

"This is not an action in which a defendant is pleading his own illness as a defense; but one in which, according to his contention, he is called upon to marry an invalid who was a healthy woman when the original contract was made. Under such a state of facts, if proven to the satisfaction of the jury, a defendant should not be held liable for damages."

The appellant then earnestly insists that the evidence in the case does not justify a verdict on behalf of respondent, and that a verdict in the sum of $4,000 clearly indicates that the jury was influenced by passion and prejudice. These matters were presented to the jury upon the facts. Appellant introduced testimony thereon. But the evidence of the respondent is that she was completely cured by an operation and subsequent treatment for the malady with which she suffered in 1905, and that, in the fall of 1908, she was well and

strong. Her testimony is corroborated to some extent and she herself was in the presence of the jury, from which real evidence the jury might derive some inference. There is, therefore, substantial evidence upon which the verdict of the jury could properly rest. Under all the circumstances and conditions shown in the case, we do not consider the verdict excessive.

There is no error. The judgment is affirmed.

MORRIS, C. J., MAIN, and PARKER, JJ., concur.