## Case No. 223.

ALLEN v. HALLET.

[Abb. Adm. 573.][1]

District Court, S. D. New York. Nov., 1849.

SEAMEN — SECRETED ON VESSEL — LIABILITY TO PERFORM SERVICE.

1. The master of a vessel is entitled to call upon the ship's cook to perform service as a seaman, so far as he possesses the requisite experience and ability.

2. Where a seaman deserts from the vessel while in port, and another hand is shipped in his place, and he afterwards returns and secretes himself on board, and is discovered by the master after the ship has left port, the master is entitled to call upon him to perform any service as seaman which may be within his ability but is not entitled to assume that he is an able seaman, and to require him to do duty as such.

3. In an action brought against a master by a seaman found secreted on board and ordered to do duty and punished for refusal, to recover damages for the punishment inflicted, it is imperatively incumbent on the master to prove, in order to justify the punishment, that before giving the order he informed himself as to the seaman's experience and capacity, and ascertained that he was able to perform the work required of him.

In admiralty. This was a libel in personam filed by James Allen against Franklin Hallet, master, and George Gibson, first mate of the packet-ship Queen of the West, to recover damages for ill usage inflicted on the libellant, on board that vessel. The facts are stated in the opinion of the court. [Decree for libellant.]

Alanson Nash, for libellant.

O. Sturtevant, for respondents.

BETTS, District Judge. This is an action of tort against the master and first mate of the packet-ship Queen of the West, for confining the libellant in irons in a painful position and posture on board the ship, and putting him on insufficient allowance of food, on her voyage from Liverpool to New York. The libellant shipped at New York as cook on board. His conduct in that capacity was unexceptionable. At Liverpool he had no duty to perform as cook, and he was ordered by the mate, and the order was confirmed by the master, to go over the side of the ship with others of the crew, and standing on a staging prepared for the purpose, or on the dock against which the ship rested, to assist in scrubbing down her sides. This was a necessary service to be performed by the crew. The libellant refused to obey the order, alleging it was not his duty. He stated his willingness to perform any seaman's duty on deck. He was ordered to perform that particular service or that he should not be fed by the ship. He and the second cook thereupon went ashore; the second cook deserting the vessel, and the libellant remaining ashore without leave until the ship sailed.

Just before the ship sailed a first and

[1][Reported by Abbott Bros.]

second cook were shipped in the places of the others. When the ship got out to sea the libellant was found on board. The answer alleges that he entered surreptitiously without the knowledge of the officers. No proof is made of the fact, nor does the libellant show when or how he returned to her. His place was, however, occupied by another cook, and he does not appear to have been at first recognized or admitted by the officers as one of the ship's company. When four or five days out from Liverpool he was ordered with other men to go over the side of the ship, in fine weather, and scrub her. This order is alleged, by the libellant, to have been given by way of punishment, and was only applied to him and one other man. On that point the testimony is in disaccord; some witnesses swearing that only one man was put to the duty, and others, that two or three men were so employed. So the answer asserts, and the fair weight of evidence may be regarded as supporting it, although the point is not clear, nor is it of sufficient importance to render its particular examination and discussion necessary.

The libellant refused to obey the order. This he did peremptorily to the captain, and with coarse and insulting language, and therefore he was gagged for a few moments, and handcuffed, and so kept for several days; during the daytime, when fair, on the after-deck, and at nights in the wheel-house; and until, as the answer asserts, he submitted, and consented to go to duty on board. On the second day after he was handcuffed, a bolt was put in his mouth as a gag. The witnesses saw it there for a few minutes, but were unable to say who put it in or for what cause. After his confinement terminated the libellant was restored to his place, and performed the duty of cook to the arrival of the ship here.

It seems to me that the case, stripped of the inflamed and reproachful terms in which the parties speak in their pleadings, is to be disposed of upon these considerations:—Was the libellant, after placing himself in the ship without the authority of the master, entitled to claim his former position? and if so, was he bound to do ordinary ship's duty when not on service in the capacity of cook? If the order of the master to the libellant to perform that duty, was a recognition of him as one of the crew, was any inexcusable violence or severity applied by his orders, in bringing the libellant to obedience? In respect to the first mate, Gibson, there is no color of evidence implicating him beyond the act of applying the handcuffs on the libellant, under the orders of the master. This was not done with harshness, or so as to cause needless pain or suffering to the libellant. In that, and in confining the libellant subsequently, he only pursued the directions and orders of the master, which were a sufficient justification for his acts. Butler v. McLelland, [Case No. 2,242.] The libel,

therefore, as to him, must be dismissed with costs.

Had the master, then, rightful authority to impose those services on the libellant, and compel his submission to them? I perceive no reason to question his power in respect to the orders given at Liverpool. 2 Pet. Adm. 368, [Bond v. The Cora, Case No. 1,620;] The Elizabeth Fritz, [Frith,] [Id. 4,361.] His command is supreme in the navigation and management of the ship at sea. This necessarily includes the employment of the crew, subject only to his responsibility to the men for any tortious or oppressive conduct towards them. A cook ships and rates as a seaman, except as to wages. He signs the articles, and designates himself as such; he commonly is a sailor, and not unfrequently acts in the double capacity of sailor and cook on the voyage, being only rated at higher wages because of that quality. He has also the privileges of a seaman, as to remedy against the ship for his cure in case of sickness, and his protection abroad if left by the vessel. Turner's Case, [Case No. 14,248;] The Louisiana, [Id. 1,461.] And he may be removed for reasonable cause, from the particular employment of cook and assigned to the common duties of a sailor. This is so even in respect to subofficers. Shermond [Sherwood] v. McIntosh, [Id. 12,778;] Mitchell v. The Rogambo, [Orozimbo,] [Id. 9,667;] The Mentor, [Id. 9,428.] And the cook, if he is entitled to any special designation of rank or privilege distinguishing him from a common sailor, he can be only so upon the terms of his contract, limiting his obligation to perform that particular service. The law will secure him the benefit of such special agreement, so long as he observes it with fidelity and intelligence, subject always to the rightful authority of the master to regulate the discipline and service of the ship at his discretion. When the orders were given at Liverpool directing him to do other duty, the libellant was not acting as cook; there was no duty for him to perform in that capacity; this employment was not taken from him; but when idle, and the state of the ship required his assistance, he was directed to aid the crew in a piece of seaman's work about the ship. He did not question his obligation to obey any order to render services on deck, but puts his refusal on the assumption that he could not be required to go over the ship's side. I see no reason for this distinction. He does not show he would be exposed to risk, in standing on the staging or the dock, nor that he was to be placed in a situation requiring experience and skill he did not possess. Whether the labor of scrubbing was then to be done on the deck or sides of the ship, in the dock, cannot, in this case, make any distinction as to his obligation to perform it. I hold, under the facts in proof, that the libellant was bound to obey the orders given him in Liverpool, and that his

refusal was refractory and mutinous, and would have justified his punishment by forfeiture of wages, or by personal coercion.

The libellant then abandoned the ship. The manner of his getting on board and to sea is not disclosed by the proofs: It is manifest, however, that he did not come back to her with a claim to his place of cook, rendering himself to the officers to perform that duty. The place had been filled by another person. The first time when he appears to have been noticed on board by the officers, was when the order was given him to go over the side and assist one or more of the men in scrubbing the ship. The ship was then some days out; according to some of the testimony two days, to others, four or five days. The relationship between the respondent and libellant was never changed. It has been held in this court, that a seaman who had abandoned his ship in a foreign port, could not, by joining her clandestinely after his place on board had been supplied, acquire the right to restoration to it or to wages. The Philadelphia, [Case No. 11,084.] If any new agreement is to be inferred from his being in the ship and the exercise of authority over him by the master, it is, that he should render such services as might be demanded of him and what he was capable of performing. The master would have no right to assume from his acting as cook on board that he was an able seaman, and compel him to go aloft, or take the wheel, or engage in work requiring professional skill and involving personal hazard. He must first inform himself of the libellant's capacity, and then most properly he might expect of him any reasonable service within his ability to render. The libellant proves, that when he refused to go over the sides of the ship on the staging, he offered to do any work on the ship's deck. The master gives no evidence that his experience or capacity qualified him to venture safely on a staging at sea whilst the ship was under way. I think it was incumbent on him in order to justify such order and the infliction of punishment by way of close confinement on board for disobedience of it by libellant, to prove the man possessed experience and capacity enabling him to fulfil the order with safety. In my opinion, the master in this act transcended his reasonable and rightful powers. He could no more enforce the orders against the libellant, on the facts in evidence before the court, than he could have done to any man found on board not shipped as one of the crew. And even if he claimed authority over him under his broken contract, he was bound to inform himself whether a man who shipped as cook, and had only served with him as such, was also competent to perform the duty of a seaman, before imposing on him any service apparently hazardous, and which might involve danger to his life. The wrongful conduct of the libellant at Liverpool, no doubt conduced to the harsh proceedings adopted by the respondent at sea. The libellant was afterwards restored to his first position as cook on board, and spoke to his companions of this transaction as of no importance, and said he should take no further notice of it; and though the court is compelled to pronounce in his favor that a tort has been committed, yet it cannot be regarded as one aggravated by any manifestation of vindictive feelings or cruel purpose on the part of the respondent.

In view of the antecedent misconduct of the libellant in the same particular, and the apparent reconciliation between the parties, in his restoration to his former place, and it is to be assumed the payment of full wages to him out and home, as he claims no balance of wages, I shall decree him damages against the respondent, Hallet, only to the amount of fifty dollars and costs, for the improper imprisonment and treatment to which he was subjected. Decree accordingly.