THE JAMES T. FURBER.

(District Court, D. Maine. November 30, 1907.)

No. 69.

MARITIME LIENS—MARINERS' SERVICES—DOMESTIC VESSEL NOT IN COMMISSION.
　　Services rendered to a domestic vessel after she has been laid up at a wharf for the winter, in pumping her out, attending to her lines, etc., are not those of a mariner, and cannot be made the basis of a maritime lien.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Maritime Liens, § 31.]

In Admiralty. On petition in intervention.

Benj. Thompson, for libelant.
Thos. E. Bolton, pro se.

HALE, District Judge. The claim of Thomas E. Bolton in this case is for services rendered to the James T. Furber, a domestic vessel in her home port, after she had gone out of commission for the season and was hauled up at Long Wharf. The work consisted of pumping the steamer out, looking after the lines, and general oversight of the vessel. All these services were performed at the request of Baker, the owner.

In The Cimbria, 156 Fed. 378, the Massachusetts District Court sustained the claim of a seaman for piloting the steamer to Lockwood Wharf, attending to making her fast there, and looking out for her safety while there. Judge Dodge said:

"I think I am justified in regarding these services, preceding as they did the final laying up of the boat, as maritime, and in holding that his claim for them is good as against the vessel."

In that case the Cimbria was a foreign vessel, and the services preceded the hauling up of the boat. In the claim at bar the services

were rendered to a domestic vessel, and after the laying up of the vessel at the wharf. It will be seen that the domestic lien statute of the state of Maine (Rev. St. c. 93, § 7) does not attempt to provide a lien for any such claim. The claim cannot, then, be allowed, unless it was distinctly for the services of a seaman. In The Hattie Thomas (D. C.) 59 Fed. 297, Judge Townsend said:

"This exception raises a difficult question, and one concerning which there has been much conflict of authority."

He makes the test, however, to be as to whether the services are such as would be rendered by a mariner; and, if they are of this character, he holds them to be of equal rank with those of other seamen, and to constitute a lien upon the vessel. See, also, The Sirius (D. C.) 65 Fed. 226; The C. Vanderbilt (D. C.) 86 Fed. 785; The Harriet, Fed. Cas. No. 6,097.

Judge Townsend recognizes the rule in this circuit laid down in The Island City, 1 Lowell, 375, Fed. Cas. No. 7,109, where Judge Lowell held that such services in taking care of a barge laid up in port were not maritime, and could not be the basis of a maritime lien against a domestic vessel, although they would be a lien against a foreign vessel.

In the case of The Cumberland (1882, unreported), without drawing an opinion, Judge Webb dismissed the libel of one King against the schooner for services while the vessel was aground in Back Bay in Portland Harbor; the case showing that the libelant was a stevedore and that his services were rendered to a domestic vessel. The libelant then filed a libel in personam; and, after a hearing, Judge Webb entered a decree in his favor with costs.

In The George T. Kemp, 2 Lowell, 477, Fed. Cas. No. 5,341, Judge Lowell said:

"While, therefore, I agree that the stevedore is not a mariner, and has no lien on a domestic ship unless the local law gives it, I cannot hold consistently with the present binding authorities, that his contract is not maritime; and so of the ship keeper. If the services or contract properly concern the ship and her owners, they are clearly maritime, and can be sued against the owners of a domestic ship personally, or against the foreign ship in rem, in this court."

In the case at bar, under the prevailing decisions, I am constrained to hold that the services are not of such a nature as must be necessarily rendered by a mariner, and, in my opinion, cannot be held to impress a lien upon a domestic vessel.

The claim is dismissed, without costs.