## THE THEMISTOCLES.

### (District Court, E. D. New York. July 10, 1915.)

SEAMEN ☞29—LIABILITY OF VESSEL FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK.

Libelant, who was employed by an agent of a ship in cleaning her after unloading, and was working under a foreman provided by the vessel, by direction of such foreman went upon a hatch cover which was partially open, and by reason of its slippery condition, owing to the use of a hose, he fell through the hatchway and was injured, without negligence on his part. *Held*, that the injury was due to the unsafe place where he was required to work, and that the vessel was liable therefor.

[Ed. Note.—For other cases, see Seamen, Cent. Dig. §§ 186, 188–194; Dec. Dig. ☞29.]

In Admiralty. Suit by Sidoro Vaccarino against the steamer Themistocles. Decree for libelant.

Cohen Bros., of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for libelant. Convers & Kirlin, of New York City (John M. Woolsey and Mark W. Maclay, Jr., both of New York City, of counsel), for claimant.

CHATFIELD, District Judge. The libelant in this action was injured by falling through a hatch opening upon the steamer Themistocles then lying at the pier in New York Harbor. He was taken to the hospital and there given what seems to have been proper treatment for his injury, which consisted of a compound fracture of the right femur. While at the hospital, although not delirious, he caused a great deal of trouble to those taking care of him. He was unable to speak the English language and tore off or tampered with his bandages. Infection seems to have occurred after the operation upon the bone of his leg. This infection has caused the wound to be slow in healing and has left a condition which may yet require further operation.

The testimony of the physicians as to the condition of the man would indicate that he was not intelligently responsible, in the usual sense, for his efforts to scratch or get at the wound. If the infection did not occur through his own conscious actions, but was occasioned by accident after operating, it would follow as a natural consequence of such a wound.

The plaintiff was working as one of a gang of men cleaning the steamship Themistocles, after her cargo destined for the United States had been removed. Some of the stores of the vessel, including certain sacks of flour, had been piled upon the hatch covers on the after two-thirds of the hatchway, leaving a clear space, about the width of one hatch cover, between the pile of flour bags and the open forward third of the hatchway. A canvas or rubber tarpaulin which belonged to the ship was on the hatch, but had been folded back from that portion of the hatch which was open.

After the day's work of unloading had been completed, the captain of the vessel, as was customary on such occasions, obtained from the

stevedores a boss, who had done this work before, and who secured some six or eight other men to clean up the vessel. These men were hired by the direction of the captain, and were not working for the contract stevedore. They were set to work upon the vessel, under the immediate direction of the man who obtained them, having been brought by him from the shore, where he went to get them for the work of cleaning up the vessel..

In so far as the evidence indicates the nature of their employment, it would seem that they were working for the vessel and were subject to the directions of the man put in charge of the cleaning by the captain, or of the stewards, whose work had to do with the operations then going on, although the man who employed them received from the ship a total sum greater than the amount of their wages and distributed to them the net amount for which they were hired. In other words, these men seem to have been employés of the ship, and not of an independent contractor.

The accident occurred after the gang of men had led a short hose, fastened to a pipe on one side of the vessel, across the hatchway, over the pile of bags containing flour, and to the gangway upon the other side of the steamer. This hose had been in place for some time, and water was turned on when needed. The testimony shows that the hose sweat, or that the water ran (seeped) back through the outside fabric of the hose. The light in this part of the vessel was not strong, and there was some testimony that more light should have been furnished for the general purposes of cleaning the decks. Two lamps were given, although six were requested.

The amount of light desired for the general work seems to have nothing to do with the charge of negligence involved in the matter of the accident. The libelant was not absolved in any way, by the lack of more lanterns or lamps, from proper care for his safety in performing work with which he was familiar. But the dim light did prevent him from realizing the slippery place where he was ordered to go. In the same way, testimony proved that a chain usually kept around the hatchway had been taken down; but this, again, had nothing to do with what happened after the libelant went out upon the hatch covers.

It appears that the water ceased coming, or did not come readily, through the hose which lay across the hatch, and the boss of these cleaners directed the libelant to go out on the hatch and straighten out a kink which he assumed would be found in the hose. The libelant was familiar with vessels, and knew that the hatch covers, if properly in place, would support him, so that he stepped over the coaming and on the hatch cover nearest where he was standing, and walked up this hatch cover toward the middle, where he says he leaned over to lift up the hose and attempted to straighten out the kink. He remembers nothing more, except that he went down and later awoke in the hospital.

The boss of the cleaners testifies that he saw the man reach over to take the hose in his hands, although one of the witnesses for the claimant testifies that upon a previous interview this boss said that the

libelant kicked at the hose. The slippery condition was the result of accumulated dirt and the moisture from the hose in question, although there is a dispute as to whether this accumulated dirt came from the removal of cargo or from the sacks of flour then present upon the hatch.

The libelant had no warning from any person as to this slippery condition, but must be held to such knowledge as he would appear to have had of the presence of water or dampness upon the tarpaulin, and he plainly knew that there was but the width of one hatch cover between the pile of flour and the open space. If the boss of these cleaners had undertaken the work as an independent contractor, and if the ship had not employed them, the plaintiff could not recover, for no condition imputing negligence to the vessel is shown, except that created by the use of water while the men were at work.

If the libelant had known of the slippery condition, or of the presence of dirt and water, and, without ascertaining the safety of the position in which he stood, kicked at the hose, the accident would have been his own fault. If the libelant did not use reasonable care in a situation with which he was generally familiar, so as to see where he was standing before attempting to pick up and unkink the hose, and if he slipped because of his own failure to use care in what he was doing, then he could not recover. But the facts indicate no such negligence on his part. The plaintiff was working for the vessel, and the person in charge of the vessel for the owners did his work in such a way that an unsafe place was created through the use of this hose. The libelant, without warning or opportunity, by way of lantern or inspection, to ascertain the nature of the place in which he would have to work, was sent to do a particular work which the person representing the owner should have known would be dangerous to do.

Considering his average earnings, his injuries, and his present condition, he will be allowed a recovery of $4,800.