## HOOF v. PACIFIC AMERICAN FISHERIES.

(District Court, W. D. Washington, N. D.   October 10, 1922.)

**1. Seamen ⬤═⧽29(1)—Rights of injured seamen stated.**

The rights in admiralty of an injured seaman preclude indemnity, and are limited to maintenance, wages and cure, except for unseaworthiness, under American Merchant Marine Act, § 33.

**2. Admiralty ⬤═⧽18—Jurisdiction in torts dependent on location.**

The jurisdiction of courts of admiralty in torts depends on location.

**3. Master and servant ⬤═⧽250—Common-law right of recovery applicable in tort action in admiralty.**

Though an admiralty court has jurisdiction of a tort action for personal injuries to a watchman on an unfinished launched vessel, the rule of right applicable, unless he bears the relation of a seaman, as defined by Rev. St. § 4612 (Comp. St. § 8392), is the common-law right of recovery.

**4. Seamen ⬤═⧽29(2)—Defective condition of stairs from one deck to another held "unseaworthiness."**

Defective condition of steps from forward bridge deck to forward main deck of vessel, resulting from removal of cleats on the main deck at the foot of the ladder, causing steps to fall when watchman making rounds attempted to descend, *held* unseaworthiness, within rule that a seaman's right to recover for injuries is not limited to maintenance, wages, and cure, where injuries were caused by unseaworthiness.

**5. Master and servant ⬤═⧽200—Watchman of uncompleted ship held not a fellow servant of employés oiling deck.**

Where cleats fastening a ladder on the bridge deck of an unfinished vessel were removed during the calking and oiling of the deck, and were not replaced, a watchman, injured when the ladder slipped, was not precluded from recovering by fellow-servant doctrine; his employment having nothing in common with the employés oiling the deck.

**6. Master and servant ⬤═⧽107(2)—Master's duty to provide safe place continuing.**

It is the master's duty to provide a safe place in which to work, and such duty is continuing.

**7. Master and servant ⬤═⧽150(5)—Master required to give warning of changes creating danger.**

It is the master's duty to warn a servant of danger created by changed conditions, causing insecurity of a ladder which the servant, without knowledge of the change, is required to use in his work.

**8. Damages ⬤═⧽130(3)—$4,000 recovery for injuries causing neurasthenia and incapacitating plaintiff from working held proper.**

Where employé was in the hospital more than six weeks, was confined to his house, and most of the time was in bed, for the greater part of two years, was suffering from neurasthenia at the time of the trial, caused by the injury, was earning $144 a month at the time of the accident, and had been unable to work for two years, he was entitled to recover the sum of $4,000.

In Admiralty. Libel by Emil Hoof against the Pacific American Fisheries. Judgment for libelant.

See, also, 279 Fed. 367.

Peringer & Thomas and Thos. R. Waters, all of Bellingham, Wash., for libelant.

Kerr, McCord & Ivey and Stephen V. Carey, all of Seattle, Wash., for respondent.

⬤═⧽For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

NETERER, District Judge. The libelant was employed by the respondent in the capacity of watchman on the vessel Cleo. The vessel had been launched, and was afloat in the navigable waters, but was not "finished," and therefore not in commission, at the time, as an instrumentality of commerce and navigation. Plaintiff, while making his rounds, and in attempting to go from the forward bridge deck to the forward main deck by means of steps which had been constructed and placed there by the respondent, and for that purpose, slipped and fell to the floor of the main deck, throwing the plaintiff to said deck, causing serious personal injury. The night was dark; it was raining; the plaintiff was supplied with a flash light; it was the plaintiff's first round as watchman on that shift. He says:

"I put my right foot on the first step, as I usually did, to determine whether it was safe, and then put my left foot forward, and the ladder slipped below, and I fell."

He had worked for respondent for eight months before the injury. I think it is established, by positive testimony and inferences from circumstances adduced (Towle v. Stimson Mill Co., 33 Wash. 305, 74 Pac. 471; Campbell v. Winslow Lbr. Co., 66 Wash. 507, 119 Pac. 832; Lichtenberg v. City of Seattle, 94 Wash. 391, 394, 162 Pac. 534; 29 Cyc. 622, 626; Esberg-Guest Cigar Co. v. Portland, 34 Or. 282, 55 Pac. 961, 43 L. R. A. 435, 75 Am. St. Rep. 651; 4 Thom. Neg. 294; The Themistocles [D. C.] 225 Fed. 671; Penn. Steel Co. v. Jacobsen, 157 Fed. 656, 85 C. C. A. 118), that the steps were substantially fastened at the time the ship was launched by cleats, and, if fastened at the top and bottom, the steps could not have fallen, and that the steps were not changed from the launching to the day of the accident. On the day of the accident the main deck was calked and oiled, and the cleats on the main deck at the foot of the ladder were removed while calking and oiling the deck, and the steps were replaced without fastening the cleats to the deck, or fastening the steps at the top. The plaintiff was not advised of the changed condition of the steps.

The respondent contends, as it did before the Circuit Court of Appeals (279 Fed. 367), that the court is without jurisdiction; (a) he sustaining a nonmaritime relation; (b) if the plaintiff's cause of action is maritime, he is limited to recovery to elements of which there is no proof; (c) if his right is nonmaritime, the evidence establishes that the injury was due directly to the negligence of the plaintiff himself, or that of fellow servants; (d) the evidence fails to establish with any degree of certainty that the injury was due to a default chargeable in law to the defendant.

[1-3] The plaintiff asserts his right to recovery of consequential damages predicated upon the common law, and cites a long line of cases, exception to neither of which can be taken.[1] The court, in The

---

[1] Thames Towboat Co. v. The Schooner Francis McD., 254 U. S. 242, 41 Sup. Ct. 65, 65 L. Ed. 245; The America (D. C.) 56 Fed. 1021; The Hattie Thomas (D. C.) 59 Fed. 297; The Sirius (D. C.) 65 Fed. 226; The James T. Furber (D. C.) 157 Fed. 124; The Fortuna (D. C.) 206 Fed. 573; The Sinaloa (D. C.) 209 Fed. 287; The Homer (D. C.) 99 Fed. 795; Pouppirt v. Elder D. Shipping (D. C.) 122 Fed. 983; The Pioneer (D. C.) 78 Fed. 600; The Hokkai Maru, 260 Fed. 569, 171 C. C. A. 353.

Moses Taylor, 4 Wall. 431, 18 L. Ed. 397, distinguishes between a remedy at common law and a common-law remedy, and it may be said the same reason applies by analogy to a remedy in admiralty and a remedy afforded by admiralty. Prior to the enactment of section 33 of the American Merchant Marine Act (41 Stat. 988) an action at law by an injured seaman did not change his right of recovery, which was governed by the maritime law. Hanrahan v. Pacific T. Co. (C. C. A.) 262 Fed. 951. The impotency of admiralty to give remedies afforded by the common law no doubt inspired section 33, supra. The rights in admiralty of a seaman preclude indemnity, and are limited to maintenance, wages, and cure, except for unseaworthiness. The Osceola, 189 U. S. 158, 23 Sup. Ct. 483, 47 L. Ed. 760; Hanrahan v. Pac. T. Co., supra.

The plaintiff has standing in the admiralty court solely because the jurisdiction of courts of admiralty in torts depend upon location. Phil., Wil. & B. R. Co. v. Phi. & H. de G. Steam Towboat Co., 23 How. 209, 16 L. Ed. 433; The Plymouth, 3 Wall. 20, 18 L. Ed. 125; Hoof v. Pac. Amer. Fish. (C. C. A.) 279 Fed. 367. While the court has jurisdiction, the rule of right applicable, unless the plaintiff bears the relation of a seaman, is the common-law right of recovery. "Seaman" no doubt once meant a person "who can hand, reef, and steer"— a mariner in the full sense of the word. As conditions changed, and necessities of changes increased, "seaman" received an enlarged meaning. The cook and surgeon, and employees other than able seamen, were included. Bean v. Stupard, 1 Doug. 11; Allen v. Hallet, 1 Fed. Cas. 472, No. 223. In The J. S. Warden (D. C.) 175 Fed. 314, a bartender was ranked as a seaman. In The Baron Napier, 249 Fed. 125, 161 C. C. A. 178, a muleteer, performing the services of a watchman, was given the status of a seaman. In The Buena Ventura (D. C.) 243 Fed. 797, a wireless operator, employed by another, but placed on the articles at the nominal sum of 25 cents a month, was classed a seaman. Section 4612, R. S. (section 8392, Comp. St.), provides that:

"* * * Every person * * * who shall be employed or engaged to serve in any capacity on board the same [vessel] shall be deemed and taken to be a seaman. * * *"

[4-7] Whether the libelant, under the facts in this case, shall have the status of a seaman, and his right of recovery be predicated thereon, I do not now think is material; in that sense, however, it may be said that the vessel was unseaworthy with respect to the steps in controversy. The libelant, as watchman, had clear and definite instructions as to his duty, which was to see that the lights were burning fore and aft, that the ropes were properly secured, and that no one trespassed on the boat, and to look out for fire. The employment of the libelant had nothing in common with the painters or calkers on the boat, and I believe from the testimony that the cleats were removed and left unfastened by the persons who oiled and calked the deck.

The libelant in his employment had nothing in common with these parties, and no circumstances are developed which imputed knowledge with relation to their qualifications or characteristics. There is no condition presented to enable the libelant to observe the fundamental ele-

ments of knowledge of danger to which he was exposed. He was not directly associated with either, and was not immediately employed with them, and over whose conduct and actions he had no control, and against whose carelessness he could not protect himself; no testimony to show that their duties brought the libelant and the parties employed in calking and oiling the deck on this day, or at all, into contact or association, or any relation established by which they might exercise mutual influences on each other promotive of proper caution; but each was employed in different lines of work, engaged separately from each other, neither knowing how the other's work was being carried on, each acting entirely independent, in a different sphere of labor, and were therefore not fellow servants. Asbury v. Hecla M. Co., 103 Wash. 542, 175 Pac. 179; Brayman v. Russell & Pugh L. Co., 31 Idaho, 140, 169 Pac. 932; Koerner v. St. L. C. Co., 209 Mo. 141, 107 S. W. 481, 17 L. R. A. (N. S.) 292; Rankel v. Buckstaff-Edwards Co., 138 Wis. 442, 120 N. W. 269, 20 L. R. A. (N. S.) 1180. It was defendant's duty to provide a safe place, and the duty is continuing, and it was the master's duty to warn the libelant of the danger created by the insecurity of the steps In this it failed. Richardson v. Spokane, 67 Wash. 621, 122 Pac. 330.

[8] The plaintiff was severely injured. There is no testimony as to sums expended in effecting a cure. At the time of the injury the libelant weighed 200 pounds, and has lost since the injury 30 pounds; has done nothing for two years. At the time of his injury he was earning $144 a month. He was in the hospital 6½ weeks, and confined to his house and most of the time in bed, according to the testimony of himself and wife, and there is no evidence to the contrary, for the greater part of 2 years. He is a sufferer now, the doctors say, of neurasthenia, caused from the injury.

Under all of the circumstances, considering the libelant's apparent physical condition, and the injury sustained, I think he should recover the sum of $4,000.