## THE SEA LARK.

(District Court, W. D. Washington, N. D. June 18, 1926.)

No. 9324.

**1. Seamen ⬥⇒2.**

Orchestra owner *held* entitled to lien for services on excursion boat, operated in and about waters of Puget Sound and Lake Washington, in view of Comp. St. § 8392, declaring every one employed on a vessel a "seaman."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaman.]

**2. Maritime liens ⬥⇒30.**

Orchestra owner, engaging to render services on excursion boat with person having no prior contractual relations with him or the boat, had duty of making inquiry as to such person's authority to contract on account of the boat, in view of Comp. St. Ann. Supp. 1923, § 8146¼pp.

In Admiralty. Libel by J. J. Smith against the excursion boat Sea Lark, formerly Blue Bird, her tackle, furniture, etc., wherein E. E. Lehman intervenes. Decree for libelant, and dismissing intervener's libel.

The libelant, owner of an orchestra composed of eight persons, seeks to impress a lien for services rendered on board the Sea Lark, operated under the name of Blue Bird, in and about the waters of Puget Sound and Lake Washington as an excursion boat. Intervening libelant seeks to impress a lien for services performed in connection with giving dances on this excursion boat. Claimant objects on the ground that the service is nonmaritime, that intervener was a coadventurer in the enterprise, that his compensation was on a percentage basis after payment of the expenses of the enterprise; and that he has been fully paid.

G. F. Vanderveer and W. G. Beardslee, both of Seattle, Wash., for libelant.

C. C. Chambers, of Seattle, Wash., for intervening libelant.

Winter S. Martin, of Seattle, Wash., for claimant.

NETERER, District Judge. [1] " * * * Every person * * * who shall be employed or engaged to serve in any capacity on board the same [vessel] shall be deemed and taken to be a seaman. * * * " Section 8392, Comp. St. This court, in Hoof v. Pac. Am. Fisheries Co., 284 F. 174, at page 176, affirmed (C. C. A.) 291 F. 306, said:

" 'Seaman' no doubt once meant a person 'who can hand, reef, and steer'—a mariner in the full sense of the word. As conditions changed, and necessities of changes increased, 'seaman' received an enlarged meaning. The cook and surgeon, and employees other than able seamen, were included. Bean v. Stupard, 1 Doug. 11; Allen v. Hallet, 1 Fed. Cas. 472, No. 223. In the J. S. Warden (D. C.) 175 F. 314, a bartender was ranked as a seaman. In the Baron Napier, 249 F. 126, 161 C. C. A. 178, a muleteer, performing the services of a watchman, was given the status of a seaman. In the Buena Ventura (D. C.) 243 F. 797, a wireless operator, employed by another, but placed on the articles at the nominal sum of 25 cents a month, was classed a seaman.

Under a statute defining a "seaman" as a person employed or engaged in any capacity on board any ship, the court held a person in charge of a confectionery stand on board a vessel, and who was engaged by the owner, a seaman. Conner v. The Ship Flora, 6 Exq. Ct. Reports (Can.) 151. A diver, a member of a crew of a scow occupied as a floating derrick with hoisting engine and engaged in the wrecking business, was held a seaman. De Gaetano v. Merritt & Chapman D. & W. Co., 203 App. Div. 259, 196 N. Y. S. 573. Persons employed on a dredge engaged in deepening channels in navigable waters, are seamen within the meaning of section 8392, Comp. St. The Hurricane (D. C.) 2 F.(2d) 70. I think the scow engaged as an excursion boat in and about the waters of Puget Sound and Lake Washington is within Admiralty jurisdiction. See Public Bath No. 13 (D. C.) 61 F. 692; City of Pittsburg (D. C.)

45 F. 699; Rogers v. A Scow Without a Name (D. C.) 80 F. 736; Woodruff v. One Covered Scow (D. C.) 30 F. 269. The musicians, under the disclosed facts, are seamen. Section 8392, supra.

The testimony is conclusive that on October 1, 1924, the Blue Bird was delivered to one Gordon under an agreement that he should be responsible for all claims. He was granted permission to "run a dance on any night he wishes during the month," he to be responsible for all debts incurred in such operation.

[2] Recovery may be had by the libelant for September 20 and September 21, 1924. The libelant testified that he was employed by Ringler, the owner, on each occasion, several days in advance, each engagement being a separate employment; that prior to October 1st, he was engaged by Ringler, owner, or his son in charge during the owner's absence. Libelant testified from memory; his books containing a record of his daily transactions were not in court. The last engagement for the owner was on the night when, on account of a storm or high wind, the engagement was abandoned. The testimony of the towboat company which towed the scow showed this to have been on September 21. The records of the towboat company disclosing such facts, as do also the books and records of the owner, the burden of proof as to the item of services on September 27th is not sustained. The engagement of the libelant's orchestra after the 1st day of October being made by Gordon, who had no prior contractual relations, or otherwise, to the scow or with the libelant, the libelant could not assume that Gordon was authorized to contract on account of the scow. Under section 8146¼pp, Comp. St. Ann. Supp. 1923, it was incumbent upon him to make inquiry as to the power of Gordon to contract on account of the scow. By reasonably diligent investigation he could have ascertained that Gordon was under primary obligation to pay these claims. See The Clio, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361. See, also, The Princess Matoika (C. C. A.) 1 F.(2d) 233, 238, 1924 A. M. C. 1033. At page 1044, Rogers, Ct. J., said: "And when a duty to make inquiry exists it must appear that the one whose duty it was to inquire prosecuted his inquiry with all the care and diligence required of a reasonably prudent man." See, also, The Plainfield, 1925 A. M. C. 565.

Intervener, Lehman, clearly has not sustained his claim by a fair preponderance of the evidence. Waiving the maritime relation of his services, there is a clear failure of proof. The testimony of the owner, Ringler, that the services were on a percentage basis, is fully corroborated by at least two credible, disinterested witnesses.

Decree will be directed in favor of the libelant for $98, for services rendered September 20 and 21, 1924, and dismissing the intervener's libel.