## Ex parte KOGI SAITO.

(District Court, W. D. Washington, N. D. March 23, 1927.)

No. 11382.

**1. United States ⟨⟩2—American vessel is deemed to be United States territory.**

American vessel is deemed to be part of the territory or state within which the home port is situated, and as such is part of the United States.

**2. Aliens ⟨⟩54(7, 14)—Telegrams received after hearing in deportation proceedings held not part of record and could not be considered by court or department.**

Telegrams sent by Immigration Director to Commissioner of Immigration relating to status

of alien sought to be deported, received after hearing in deportation proceedings was had and director advised that deportation be effected, *held* not part of record and could not be considered by court or department; no new hearing having been ordered.

3. Aliens ⬥�415� 53—Alien member of crew on American ship returning from foreign waters is not subject to immigration laws.

Though alien who departs from United States, even for a brief time, on re-entry is subject to immigration laws, this has no application to alien member of crew on American ship returning from foreign waters.

4. Aliens ⬥�415⟨ 53—Alien cook on American ship held "seaman" and did not "re-enter" United States on ship's return from foreign waters so as to be subject to deportation on conviction of crime (Immigration Rules of July 1, 1925, Rule 6; Comp. St. § 4289¼jj).

Alien cook on American ship is a "seaman" within Immigration Rules of July 1, 1925, Rule 6, and did not "re-enter" United States on return of ship from foreign waters within Comp. St. § 4289¼jj, so as to be subject to deportation on conviction of crime within five years after such return, and question whether he is likely to become public charge will not be considered in deportation proceedings.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Re-enter; Seaman.]

In the matter of the application of Kogi Saito for writ of habeas corpus to secure discharge from order of deportation. Writ issued.

Bullitt & Kahin, of Seattle, Wash., for petitioner.

Thos. P. Revelle, U. S. Atty., and C. T. McKinney, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

NETERER, District Judge. From an order of deportation the petitioner seeks discharge on a writ of habeas corpus, claiming that he was denied a fair trial. The basis of the order of deportation is that he is in the United States in violation of the Immigration Act of February 5, 1917 (Comp. St. § 4289¼a et seq.), to wit, that he is a person likely to become a public charge at the time of his entry.

The record discloses that petitioner was born in and is a subject of Japan; that he came to the port of San Francisco some 14 years ago. In 1920 he made a visit to Japan for six months, returning to the port of San Francisco in the spring of 1921, and worked in Oregon and Washington and in Alaska. He entered the employ of the Barrington Transportation Company at Wrangell, Alaska, as a cook on the boat Hazel B–3 and the boat Hazel B–4, on the 26th day of March, 1926, and was discharged on May 11th following. The boats operated on the Stikene river between Wrangell, Alaska, and Telegraph Creek, B. C. The petitioner is and has been the owner of a restaurant at Wrangell, Alaska, for more than two years, which was leased at the time of his employ and at the time of his arrest and detention to another Japanese for two years, for $65 a month. The restaurant is valued at $5,000, subject to a mortgage of $1,700.

On November 18, 1925, the petitioner was convicted of violating the Alaska Prohibition Act (Comp. St. §§ 3643b–3643r), and was punished by three months in jail and a fine of $50. On May 3, 1925, he was arrested for a similar charge and was acquitted by a jury. On September 28, 1926, he was convicted under section 1947, Compiled Alaska Laws, for trespassing, and was fined $10.

The petitioner has been earning in canneries, and on boats, $100 a month.

The government contends that petitioner, employed on these American vessels sailing in British Columbia waters, re-entered the United States on the return of the vessels; and the last trip on which the petitioner was employed was made May 11, 1926; and that he has since been convicted and fined $10 and costs, which he declined to pay, and was committed until paid or the judgment satisfied under the Alaska law by serving one day for each $2 fine and costs; and contends that the petitioner was not registered upon the ship's articles, and was therefore not a seaman under rule 6 of Immigration Rules of July 1, 1925.

This court in the Sea Lark (D. C.) 14 F. (2d) 201, quoting from Hoof v. Pacific American Fisheries Co. (D. C.) 284 F. 174, affirmed Id. (C. C. A.) 291 F. 306 (also this court), said: " 'Seaman' no doubt once meant a person 'who can hand, reef, and steer' —a mariner in the full sense of the word. As conditions changed, and necessities of changes increased, 'seaman' received an enlarged meaning. The cook and surgeon, and employees other than able seamen, were included. * * * In the J. S. Warden (D. C.) 175 F. 314, a bartender was ranked as a seaman. In the Baron Napier, 161 C. C. A. 178, 249 F. 126, a muleteer, performing the services of a watchman, was given the status of a seaman. In the Buena Ventura (D. C.) 243 F. 797, a wireless operator, * * * was classed a seaman. * * *" A person in charge of a confectionery stand on board a vessel, and who was engaged by the owner, was held a seaman, in Conner v. The Ship Flora, 6 Exq. Ct. Reports (Can.) 151. In Weedin v. Banzo Okada (C. C. A.) 2 F.(2d)

321, Judge Rudkin for the Circuit Court, affirming this court, held that a Chinese member of a crew on a United States ship could not be excluded or deported because he landed after sailing in foreign waters, and, among other things, said, at page 322: "If the appellee had remained at all times on shipboard, it would scarcely be contended that he left the United States, and the fact that he was permitted to land at Honolulu for a few hours, by the captain, did not change his status." See, also, Ex parte T. Nagata (D. C.) 11 F. (2d) 178.

[1] That an American vessel is deemed to be a part of the territory or state within which its home port is situated, and as such a part of the United States, is stare decisis.

The record does not disclose that the petitioner at any time left the vessel upon which he was employed as a cook. The contention of the government on this hearing, that the petitioner was not noted on the ship's articles, is not sustained by any evidence in the record.

[2] The petitioner was ordered deported on the 13th day of November, 1926, and was detained in custody of United States marshal at Ketchikan, Alaska, until brought to the port of Seattle for deportation. On January 13, a further hearing was had by the Board of Review, and on January 17, the District Director of Immigration at Ketchikan, Alaska, was advised "that deportation be effected, but that proper attention be given need of an opportunity to dispose of his property before deportation is effected." Saito was attached to the United States marshal's party leaving Wrangell for Seattle, and was placed in custody of Weedin, Commissioner of Immigration, on February 11, 1927, and held for deportation. On March 12, a telegram was received by the commissioner from Immigration Director Strench at Ketchikan, in reply to a telegram from the commissioner making inquiry from Strench, at Ketchikan: "Kogi Saito did not sign ship's articles hence not within definition of seaman stated in rule six and is not entitled to status of seaman." And also a telegram to the effect that Saito was discharged by the owner of the boat before he reached the boundary, and performed no labor thereafter, "and that he was in reality passenger on free transportation. * * *"

These telegrams are clearly not a part of the record. No new hearing had been ordered. Neither the court nor the department has any right to consider them, and in reality they are immaterial. Saito was, in fact, a member of the crew on the boat and engaged as a cook, of which fact there is no doubt in the record.

[3] While departure by an alien from the United States, even though for a brief time, on re-entry, is subject to the Immigration Laws (Lewis v. Frick, 233 U. S. 291, 297, 34 S. Ct. 488, 58 L. Ed. 967; Lapina v. Williams, 232 U. S. 78, 31 S. Ct. 222, 54 L. Ed. 1204), this has no application to a member of a crew on an American ship on foreign waters.

[4] The petitioner, not re-entering on May 11, is not within the period of five-year limitation (section 4289¼jj, C. S.), and whether he is likely to become a public charge will not be considered. A fair hearing was not given. The writ will issue.

In this connection, however, it may be said that the charge of September 26, 1926, clearly has earmarks of one person endeavoring to settle a private dispute through the criminal court. The complaint, in substance, charges Saito with unlawfully and feloniously taking possession of certain property in the possession of the complainant, and obstructing a "private walk." The issue was tried before a jury, and the jury returned the following verdict:

"We the jury impaneled and sworn in the above-entitled cause find the defendant guilty of the crime charged in the complaint, recommend the utmost leniency of the court. We further recommend that the present walk of approximately five (5) feet in width be left open for the benefit of both parties, for a distance of 120 feet in a southerly direction commencing at Front street, in line with the present Starland Theater front. This walk to be kept up jointly by the parties claiming the adjoining lands and further that all obstruction be removed from said walk for the above-mentioned distance of 120 feet. J. G. Grant, Foreman.

"Approved this 28th day of September, 1926. Wm. G. Thomas, U. S. Commissioner and Ex Officio Justice of the Peace."

And the record shows that there was entered upon the journal of the said justice, the following: "It is further ordered that the *defendant* and the *plaintiff* remove the obstruction mentioned by the jury, as recommended in this verdict." (Italics supplied.)