In the Matter of the Claim of ALFRED C. JONES, Respondent, against INTERNATIONAL MERCANTILE MARINE Co. and Another, Appellants.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, October 27, 1937.

*E. C. Sherwood* [*William B. Davis* of counsel], for the appellants.

*John J. Bennett, Jr., Attorney-General* [*Roy Wiedersum, Assistant Attorney-General,* of counsel], for the respondent State Industrial Board.

RHODES, J. (Acting P. J.) The question presented is one of jurisdiction.

Deceased was a watchman on the steamship *Minnekahda*, and was killed by a fall through an open hatch into the hold of the ship while attempting to move a tarpaulin with which to cover the ventilators.

The board has found that he was employed to protect and guard the ship while tied up at Pier No. 8, Staten Island, N. Y.; that during the course of his employment the ship was out of commission, off charter and without marine insurance, and that the services performed by him were not maritime and had no connection with either present or prospective navigation.

The ship was foreign built with an American flag, and had been out of service for two years, was not dismantled, was seaworthy, "just temporarily laid up until they had service for her." She was used as a mother ship, and steam was kept up for the purpose of preventing the freezing of the pipes, and she furnished steam for a similar purpose to two other ships which were tied up near her. A skeleton crew was kept on the boat, a stand-by crew, chief officer, engineer and watchman. Deceased was not the chief officer, was not in charge of the ship, and gave no orders to the engineer. He was there to see that there was no pilfering — to see that the hatches were properly covered.

The steam was not maintained for the purpose of navigation, and he had nothing to do concerning the navigation or maneuvering of the boat.

The claim of appellants is that the State Industrial Board had not jurisdiction for the reason that the claim properly comes under the Federal Longshoremen's and Harbor Workers' Compensation Act (U. S. Code, tit. 33, chap. 18), and that jurisdiction under said Longshoremen's Act is exclusive.

Prior to the adoption of said act it had been held that services similar to those of a watchman of a vessel lying at her home port with no voyage in contemplation were not maritime; that in order to render the services maritime they must be connected with the navigation of the vessel. (See *The Sirius*, 65 Fed. 226; *Cox* v. *Murray*, 6 Fed. Cas. No. 3304; *Gurney* v. *Crockett*, 11 id. No. 5874; *The James T. Furber*, 157 Fed. 124; *The Harriet*, 11 Fed. Cas. No. 6097.)

The act provides for compensation for disability or death of an employee, "but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly

be provided by State law." The act expressly provides that it does not include a master or member of a crew of any vessel.

In *Union Oil Co.* v. *Pillsbury* (63 F. [2d] 925) claimant was a night watchman on a vessel which had arrived in port and was undergoing overhauling in a floating dry dock in order that she might resume her navigation, which overhauling ordinarily lasted but a few days. While in the course of his duties he was shot by a burglar. It was held that he was not a member of the crew and that he was within the coverage of the Longshoremen's Act.

In that case, however, the vessel had not been withdrawn from navigation, which was not the situation in the case before us.

In the case of *Diomede* v. *Lowe* (87 F. [2d] 296) the deceased employee was in charge of a dump scow used to transport ashes and refuse from piers within the harbor of New York to the dumping grounds beyond the harbor limits, and was the only person working thereon. The scow had no means of self-propulsion and was towed by tugs. It was equipped with a cabin used by decedent, and he was required to remain on board at all times except when granted permission otherwise. While the scow was being towed toward a destination beyond the harbor limits, but while still within the harbor, decedent fell overboard and was drowned.

It was held that his employment came within the scope of the Longshoremen's Act. The court there pointed out that the act draws a distinction between seamen and harbor workers, covering the latter only, and held that deceased was a harbor worker.

In *Seneca Washed Gravel Corp.* v. *McManigal* (65 F. [2d] 779) deceased was a night watchman on a vessel in winter quarters withdrawn from navigation, and his duties did not require him to take any part in the navigation of the ship. He was " the night watchman the year round," and he never was on the steamer when she was under way, and he lived on shore. He fell overboard and was drowned. The court held that he was not a member of the crew and that compensation should be awarded under the Longshoremen's Act. The court held that the act applied. It does not appear that the question was raised as to whether a State compensation law might have application. The question presented was whether the status of deceased carried benefits under the Merchants' Marine Act or the Longshoremen's Act.

In *Matter of McKinnon* v. *Kinsman Transit Co.* (265 N. Y. 560) the claim was for death benefits arising out of the death of a ship-keeper aboard a grain carrier anchored in the navigable waters of Lake Erie, nearly half a mile from shore. The crew had been discharged, the boilers dumped, and it was not until later that the vessel was taken to a grain elevator and its cargo unloaded.

It was held that the work of decedent was of a maritime nature, having direct relation to navigation, and that the jurisdiction of admiralty excluded the jurisdiction of the Workmen's Compensation Commission.

In *United States Casualty Co.* v. *Taylor* (64 F. [2d] 521; certiorari denied, 290 U. S. 639) the employee was engaged in drilling holes for the placing of lights on the mast of a lightship, which vessel the employer was building; she had been launched and was then afloat at a dock in the Cooper river, though only ninety-six or ninety-seven per cent complete. The court said that the work of claimant was not maritime in the accepted meaning of that term; that the Longshoremen's Act is obviously restricted to persons engaged in *maritime employment* and that it deals exclusively with compensation as to injuries occurring on the *navigable water* of the United States. The court reversed a decree awarding compensation under the Longshoremen's Act, holding that the case was one wherein the State of South Carolina might validly provide for workmen's compensation.

Appellants refer to the cases of *Tucker* v. *Alexandroff* (183 U. S. 424) and *The Raithmoor* (241 id. 166) in support of their contention that as soon as a vessel is launched, although still incomplete, it is subject to admiralty jurisdiction. This may be true, but it does not follow that all employments connected with the vessel are maritime in character.

The ship in the present case was certainly upon navigable waters, but the employment of deceased was not maritime in character for the vessel had been withdrawn from navigation and was out of commission. It would seem under the reasoning of *United States Casualty Co.* v. *Taylor (supra)*, that the Longshoremen's Act does not apply and that the State Industrial Board had jurisdiction.

The award should, therefore, be affirmed, with costs.

McNAMEE, CRAPSER and HEFFERNAN, JJ., concur; BLISS, J., dissents, with an opinion.

BLISS, J. (dissenting). I dissent from the opinion for affirmance and vote to reverse the award and dismiss the claim upon the ground that the claim properly comes under the Federal " Longshoremen's and Harbor Workers' Compensation Act," and that the liability of the employer under that act is exclusive.

This accident occurred while the claimant was on board ship upon navigable waters, although the ship was tied up in New York harbor alongside the dock. Clearly claimant was not a member of the crew of the ship (*Seneca Washed Gravel Corp.* v.

*McManigal*, 65 F. [2d] 779) so as to be excluded from the coverage of the Longshoremen's and Harbor Workers' Compensation Act. He was, however, employed in maritime employment upon navigable waters of the United States. (*Union Oil Co.* v. *Pillsbury*, 63 F. [2d] 925.)

Award affirmed, with costs to the State Industrial Board.